J^SUSAN M. CHEHARDY, Judge.
In this personal injury lawsuit where defendant stipulated to liability, the jury awarded plaintiff general damages, medical expenses and lost wages. Plaintiff appeals the jury’s award of general damages as abusively low. For the following reasons, we affirm.

Facts

On the afternoon of December 21, 1999, the plaintiff, Wayne Tauzier, Jr., was driving southbound on Williams Boulevard in Kenner in his 1988 Ford F-150 pickup truck. Although traffic was stopped in the center and left lane, plaintiff was in the far right lane traveling between 30 to 35 miles per hour, which was below the posted speed limit on that portion of Williams Boulevard on that date. As plaintiff approached the intersection of Williams and 31st Street, defendant, Angela Kraus, who had been traveling west on 31st Street in her mother’s 1991 Dodge Dynasty, pulled out from between the cars stopped in the center lane into plaintiffs lane and stopped. Although he braked, plaintiff was unable to stop and broadsided defendant.
After the accident, even though he did feel pain in his left knee, plaintiff refused medical treatment at the scene. Defendant was cited for driving with a | .^suspended license and failure to yield. Both cars were severely damaged in the collision.
Later that evening, plaintiffs mother brought him to the emergency room at East Jefferson General Hospital because he was complaining of pain in his left knee. X-rays of plaintiffs knee on that date revealed no abnormality of the left knee. On December 21, 1999, the emergency room physician prescribed an anti-inflammatory to help reduce any swelling and discharged plaintiff with a diagnosis of “knee contusion.”
Plaintiff continued to experience knee pain and swelling so he made an appoint *1210 ment with Dr. Chad Millet, an orthopedic surgeon. On December 30, 1999, Dr. Millet examined plaintiff and found “some tenderness over the patella with some patello-femoral arthrosis” or, in laymen’s terms, pain under the kneecap. Dr. Millet also noted “no obvious swelling.” Dr. Millet continued the anti-inflammatory medications with recommendation to plaintiff to return if he had further problems.
Although plaintiff contends that during his first visit to Dr. Millet after his automobile accident he told Dr. Millet that he had pain “on the top of his [left] kneecap” and “pain to the inside of the [left] knee,” there was no mention in Dr. Millet’s record that plaintiff complained that day of tenderness near the medial[1] joint line of his left knee. Dr. Millet also stated that he did not believe that plaintiff had a tear in the medial meniscus of his left knee at that point.
On February 11, 2000, plaintiff returned to Dr. Millet stating that his knee was fine until “last week [when] he was running and felt his knee pop.” That day, Dr. Millet observed swelling and “tenderness over the medial joint line with no obvious effusion,” which indicated a “possible tear” in the medial meniscus of the |4left knee. Dr. Millet testified that the plaintiffs complaints during his February 2000 visit were very different from his complaints right after his automobile accident. Although Dr. Millet could not rule out the automobile accident as the cause of plaintiffs meniscal tear, he opined that, of the two events, the running event would seem the more likely cause of the meniscal tear.
Plaintiff testified that the “knee popping incident” did not occur when he was running as Dr. Millet described but he experienced pain after walking rapidly in an attempt to catch up to a group of coworkers when they were all leaving work. Further, he could not recall exactly what he told Dr. Millet about the incident.
When plaintiff visited Dr. Millet on April 6, 2000 with continuing complaints of persistent pain and swelling in his left knee, Dr. Millet recommended arthroscopic surgery. On May 1, 2000, Dr. Millet performed arthroscopy and repaired the torn medial meniscus of plaintiffs left knee. On May 8, 2000, Dr. Millet examined plaintiff who, according to Dr. Millet’s records, presented “without complaints” and determined that plaintiff was recovering very well.
On May 31, 2000, plaintiff again visited Dr. Millet and reported, according to Dr. Millet’s records, that he been doing very well until the previous week when he “tripped and injured his left knee.” He presented with complaints of pain in the medial area of his left knee. Dr. Millet diagnosed plaintiff with a “strain vastus medialis left knee” and prescribed anti-inflammatory medication and therapy with heat and ice. Plaintiff testified that he did not remember tripping and injuring his left knee in May of 2000 or telling Dr. Millet that he had tripped.
In plaintiffs final visit with Dr. Millet on June 22, 2000, plaintiff complained of pain in his left knee and Dr. Millet observed “minimal tenderness |5over the medial joint line” and “mild pain with patellofemoral compression.” Dr. Millet discharged him on that date to return on an “as-needed” basis.
*1211 On July 31, 2000, plaintiff sought treatment for pain in his knee from another orthopedist, Dr. Warren Bourgeois. On that date, after examining plaintiff, Dr. Bourgeois diagnosed plaintiff with persistent symptomatic inflammation of the medial plica and pain at the patella of the left knee. In laymen’s terms, plaintiff was experiencing pain associated with an injury to the cartilage on the underside of the kneecap and a thickening of the lining of the knee joint at the inside of the kneecap. Dr. Bourgeois prescribed anti-inflammatory medications and referred plaintiff for physical therapy.
On September 18, 2000, plaintiff again visited Dr. Bourgeois, who determined that plaintiff was still experiencing inflammation of the medial plica in his left knee. Dr. Bourgeois prescribed anti-inflammatory medication and continued physical therapy. After several weeks of physical therapy, plaintiffs symptoms ceased and he was released by Dr. Bourgeois without restrictions. Plaintiff testified that his knee is “fine now.”
On December 13, 2000, plaintiff filed suit against Angela Kraus, Regina Kraus, Hartford Insurance Company of the Midwest (“Hartford”), and State Farm Mutual Automobile Insurance Company (“State Farm”) for damages arising out of the automobile accident. Hartford was the Krauses’ insurer on the date of the accident. State Farm was plaintiffs uninsured/underinsured motorist carrier on the date of the accident. On January 30, 2001, State Farm, in its answer, filed a cross-claim seeking reimbursement for medical payments made to plaintiff pursuant to its uninsured/underinsured motorist coverage for plaintiff.
On February 25, 2002, the matter proceeded to trial. At trial, the Krauses and Hartford stipulated that Angela Kraus was at fault in the automobile accident on December 21, 1999. Further, the parties stipulated that, to the extent that | ¡¡plaintiff recovered medical expenses, State Farm would recover $5,000.00, the amount of its medical payments to plaintiff.
On February 26, 2002, after hearing testimony and evidence, the twelve-person jury awarded the plaintiff medical expenses totaling $17,870.79, lost wages totaling $1,800.00, and pain and suffering totaling $2,000.00. The trial judge thereafter issued a written judgment awarding $16,670.79 to plaintiff and $5,000.00 to State Farm.
On appeal, plaintiff contends that the jury’s award of $2,000.00 for pain and suffering was abusively low since he was in physical therapy for five months and underwent knee surgery. He claims that his general damage award should have been higher because he was unable to participate in leisure sports for the duration of his injury. Further, he also contends that he can no longer participate in these activities “in order to preserve himself for his employment.”
In Theriot v. Allstate Ins. Co., 625 So.2d 1337 (La.1993), the Louisiana Supreme Court said:
Our jurisprudence has consistently held that in the assessment of damages, much discretion is left to the judge or jury, and upon appellate review such awards will be disturbed only when there has been a clear abuse of that discretion. And, “it is only after articulated analysis of the facts discloses an abuse of discretion, that the award may on appellate review be considered either excessive or insufficient.” Appellate courts review the evidence in the light *1212 which most favorably supports the judgment to determine whether the trier of fact was clearly wrong in its conclusions. Before an appellate court can disturb the quantum of an award, the record must clearly reveal that the jury abused its discretion. In order to make this determination, the reviewing court looks first to the individual circumstances of the injured plaintiff. Only after analysis of the facts and circumstances peculiar to the particular case and plaintiff may an appellate court conclude that the award is inadequate.
Prior awards under similar circumstances serve only as a general guide. If the appellate court determines that an abuse of discretion has been committed, it is then appropriate to resort to a review of prior awards, to determine the appropriate modification of the award. In such review, the test is whether the present award is greatly disproportionate to the mass of past awards for truly similar injuries. In instances where the appellate court is compelled to modify awards, |7the award will only be disturbed to the extent of lowering or raising an award to the highest or lowest point which is reasonably within the discretion afforded the trial court.
This court recently considered the standard of appellate review of general damages awards in Hae Woo Youn v. Maritime Overseas Corp., et al, 623 So.2d 1257 ... (La.1993);[sic] the majority opinion contains the following commentary of the interpretation and application of the controlling legal precepts:
The standard for appellate review of general damage awards is difficult to express and is necessarily non-specific, and the requirement of an articulated basis for disturbing such awards gives little guidance as to what articulation suffices to justify modification of a generous or stingy award. Nevertheless, the theme that emerges from Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963) through Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976), and through Reck v. Stevens, 373 So.2d 498, 501 (La.1979) to the present case is that the discretion vested in the trier of fact is “great,” and even vast, so that an appellate court should rarely disturb an award of general damages. Reasonable persons frequently disagree about the measure of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award. [Citations omitted.]
Theriot, 625 So.2d at 1340-1341.
In this case, the jury awarded $2,000.00 for pain and suffering. Plaintiff underwent outpatient surgery to repair the torn medial meniscus in his left knee. Both of plaintiffs orthopedists indicated that his post-surgery recovery was excellent. Further, he was released by both orthopedists without any physical restrictions. In fact, at trial, he stated that he was free from pain and his knee was “fine.” Moreover, both orthopedists stated that neither the injury that he received nor the surgery that it required were likely to increase his chances for future knee problems.
At trial, plaintiff testified that he left his job as a warehouseman after his injury because his co-workers were “harassing” him about his work performance. At trial, *1213 however, he testified that he was now working at a better job with higher pay. Further, he was physically able to perform each of his job requirements. |R After a thorough review, we are of the firm opinion that the jury did not abuse its vast discretion in this award and, thus, we decline to modify it.
Plaintiff has requested that we compare the damages award given in this case with prior awards given in other cases involving similar injuries. However, as noted above, the Louisiana Supreme Court in Youn v. Maritime Overseas Corp., supra, stated that it “disapproved of the use of a scale of prior awards in cases with generically similar medical injuries to determine whether the particular trier of fact abused its discretion in the awards to the particular plaintiff under the facts and circumstances peculiar to the particular case. (Citation omitted).”
Further, it is only after the reviewing court finds an abuse of the trial court’s vast discretion in setting an award of damages that the court can then “resort to a review of prior awards to determine the appropriate modification of the award.” Theriot, 625 So.2d at 1340. Because we do not find an abuse of the vast discretion afforded the trier-of-fact in setting the award for damages in this case, we cannot resort to a review of prior awards to determine whether or not the award in this case is insufficient.
For the above discussed reasons, the judgment of the trial court is affirmed. All costs are assessed against appellant.

AFFIRMED.

GOTHARD, J., Dissents.

. Medial is defined as "relating to, situated in, or extending toward the middle; median.” American Heritage Dictionary of the English Language (4th ed.2000). For example, when referring to the knee, medial would mean the side of the knee that is closest to the other knee.