HANS J. LILJEBERG, Judge.
[gin this motor vehicle accident case, plaintiff appeals the trial court’s awards of general and special damages, asserting *691 that they are insufficient and inadequate. For the following reasons, we affirm.

FACTS AND PROCEDURAL HISTORY

This case arises from a motor vehicle accident that occurred on March 5, 2008, in Harvey, Louisiana. Plaintiff, Brenda Romano, was traveling in a westerly direction in the middle lane of Lapalco Blvd., and Anthony Bennett, while in the course and scope of his employment as a deputy with the Jefferson Parish Sheriffs Office (“JPSO”), was traveling on Lapalco Blvd. in an easterly direction. According to the testimony at trial, while responding to an emergency call, Officer Bennett made an illegal u-turn, crossed over three lanes of traffic on westbound Lapalco Blvd., and collided with the vehicle being driven by Ms. Romano.
On March 4, 2009, Ms. Romano filed suit against the JPSO and Anthony Bennett, asserting that Officer Bennett was solely at fault for the accident and that she suffered severe physical injuries, primarily to her neck and back, as a result of the accident. On April 3, 2009, Newell Normand, in his capacity as Sheriff for the IsParish of Jefferson, answered the petition, denying plaintiffs allegations and asserting that Ms. Romano was at fault for the accident.
On June 25, 2013, the matter came before the court for trial on the merits. At trial, Ms. Romano and Officer Jerry Bonds, who investigated the accident, testified live. The depositions of a witness to the accident, Mr. Forrest Snider, and a doctor who performed an independent medical examination, Dr. Najeeb Thomas, were admitted into evidence. Plaintiffs medical records and bills were admitted into evidence as well.
The issues on appeal pertain solely to damages. With regard to her claim for damages, Ms. Romano testified that after the accident, she began to have headaches, and she had neck and lower back pain. On March 12, 2008, Ms. Romano began treatment with Dr. Haydel, a chiropractor at Medical Rehab Accident Injury Center. On March 14, 2008, she saw Dr. Green-berg, a medical doctor at Medical Rehab Accident Injury Center, and he noted in his report that he believed Ms. Romano had a cervical and lumbar spinal strain/ sprain, thoracic spinal myofascitis, and a right shoulder sprain. Ms. Romano received rehabilitation treatment at Medical Rehab Accident Injury Center from Dr. Haydel and Dr. Greenberg from March 12, 2008 to November 16, 2009. The medical records show that on March 14, 2008, Dr. Greenberg prescribed Darvocet for Ms. Romano’s pain. The medical records also show that from November 14, 2008 through May 15, 2009, Dr. Greenberg prescribed pain medication, Lorcet or Lortab, for Ms. Romano on several occasions.
On March 17, 2008, Ms. Romano saw Dr. Kang, a medical doctor at Metairie Health Care Center, complaining of neck pain, right shoulder pain, right arm pain, and mid and lower back pain. Dr. Kang’s report indicates that she believed Ms. Romano had acute bilateral cervical and lumbar muscle |4strains/sprains. Dr. Kang prescribed Lortab, Soma, and Medrol Dose Pack for Ms. Romano at this visit. Ms. Romano continued to see Dr. Kang through July 21, 2008, and in addition to treatments, she received prescriptions for Lortab and Soma at her visits.
Ms. Romano saw Dr. Bartholomew, a neurological surgeon, on May 15, 2008. Based on his examination and review of her cervical spine MRI, Dr. Bartholomew believed that Ms. Romano’s cervical spine had existing degenerative disc disease that had become symptomatic. He did not recommend surgery for Ms. Romano, but rather preferred to try “conservative measures.”
*692 From March 3, 2010 through September 22, 2010, Ms. Romano received rehabilitation treatment from Dr. Theriot, a chiropractor at Advanced Medical Center of Gretna/Uptown, L.L.C. Ms. Romano also saw Dr. Vogel, a neurological surgeon, on March 1, 2010, for evaluation of her cervical, arm, lumbosacral, and right leg pain. Dr. Vogel recommended that Ms. Romano continue with conservative care, including physical therapy and medication. Ms. Romano saw Dr. Vogel again on March 22, 2010, and his report indicates that due to Ms. Romano’s complaints of persistent discomfort and unresponsiveness to conservative treatment, he recommended that she be admitted to the hospital for further testing, including a cervical myelo-gram/CAT scan and lumbar disco-gram/CAT scan. He indicated that these test results would determine if Ms. Romano was a surgical candidate. Ms. Romano testified that she did not submit to these tests, because she could not afford them.
Ms. Romano also saw Dr. Morris, a pain management doctor at Total Health Solutions, L.L.C. in Waveland, Mississippi, on April 2, 2008, less than a month after the accident, and she continued to see him or receive treatment and/or prescriptions for pain medication until trial. At trial, Ms. Romano testified that |fishe had seen Dr. Morris on a monthly basis since 2008. At her first visit on April 2, 2008, Dr. Morris prescribed hydrocodone, Xanax, and Soma. The records show that Dr. Morris consistently prescribed pain medication for Ms. Romano at her visits. Mr. Romano testified that at the time of trial, she was taking approximately four to five oxyco-done per day, and that she functions well on this medication.
Finally, Ms. Romano saw Dr. Thomas, a neurologist, on March 23, 2010, for an independent medical examination. Based on the examination and the medical records he received, Dr. Thomas agreed that Ms. Romano had a cervical muscle strain, and he believed that she should be treated with physical therapy and injections. In his deposition, Dr. Thomas testified that he would not recommend surgery at that time. Dr. Thomas also testified that the MRIs he reviewed showed that Ms. Romano had pre-existing degenerative problems that were not a direct result of the accident.
At the conclusion of trial, the trial court took the matter under advisement. Thereafter, on August 5, 2013, the trial court rendered a judgment in favor of Ms. Romano, finding Sheriff Normand liable for the injuries she suffered in the accident. The trial court awarded Ms. Romano special damages in the amount of $14,243.00 and general damages in the amount of $48,000.00, for a total of $62,243.00, together with interest and all costs of the proceedings.
On August 30, 2013, the trial judge issued reasons for judgment, in which she explained that her general damage award was based on $2,000.00 per month for 24 months. The trial judge further stated that the special damage award of $14,243.00 was for the following expenses: $8,686.00 for rehabilitation treatment provided by Dr. Haydel and Dr. Greenberg; $1,551.00 for treatment received from Dr. Kang; $1,100 for a cervical spine MRI conducted by Eastbank Imaging; $1,100.00 for a lumbar spine MRI conducted by Eastbank Imaging; $686.00 for | nmedical treatment by Dr. Bartholomew; $450.00 for an MRI conducted by OpenSid-ed MRI; and $670.00 for medical treatment by Dr. Vogel. The trial judge opined that the amount awarded was sufficient to compensate Ms. Romano for the injuries she sustained as a result of the accident. She stated that special damages were not awarded for the treatment plaintiff re *693 ceived from Dr. Morris at an out-of-state pain management clinic, because she was under the treatment of local physicians at the same time and Dr. Morris’ treatment was duplicative and excessive. She further stated that the medication prescribed by Dr. Morris was unnecessary or was in addition to medication already provided by the other physicians. Finally, the trial judge did not award any damages related to Dr. Theriot’s treatment at Advanced Medical Center, because there was a gap of three and one-half months between plaintiffs last treatment with Dr. Haydel and Dr. Greenberg on November 16, 2009, and her first treatment with Dr. Theriot on March 3, 2010. The trial judge found that this gap in treatment would not exist if Ms. Romano was in need of rehabilitation treatment. She also stated that she found that some of Ms. Romano’s injuries were not the result of trauma but rather degeneration.
Ms. Romano appeals from the trial court’s judgment.

LAW AND DISCUSSION

On appeal, Ms. Romano asserts that the awards for both general and special damages are insufficient. In her first assignment of error, Ms. Romano argues that the trial judge erred by awarding $2,000.00 per month for pain and suffering for only a two-year period, because the evidence shows that she was treated for 61 months, which is over five years. She contends that while the trial judge found that some of her injuries were due to degeneration, she was not in pain prior to the accident and a tortfeasor is responsible for the aggravation of a pre-existing injury.
17Compensatory damages are divided into special damages and general damages. Special damages, such as medical expenses, are those which either must be specially pled or can be determined with relative certainty. Wainwright v. Fontenot, 00-0492, p. 5 (La.10/17/00), 774 So.2d 70, 74; Beausejour v. Percy, 08-379, p. 6 (La.App. 5 Cir. 10/14/08), 996 So.2d 625, 628. General damages are inherently speculative in nature and cannot be fixed with any mathematical certainty. These include pain and suffering. Wainwright, 00-0492 at 5,774 So.2d at 74. The plaintiff has the burden of proving the damage she suffered as a result of the defendant’s fault. Id. at 10,774 So.2d at 77.
The trier of fact is given great and even vast discretion in setting general damage awards, and an appellate court should rarely disturb an award of general damages. Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1260 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994); Nunnery v. City of Kenner, 08-1298, p. 10 (La.App. 5 Cir. 5/12/09), 17 So.3d 411, 418. The initial inquiry in appellate review of general damages is “whether the award for the particular injuries and their effects under the particular circumstances on the particular injured person is a clear abuse of the ‘much discretion’ of the trier of fact.” Youn, 623 So.2d at 1260. In reviewing the factfinder’s assessment of general damages, the court does not decide what it considers to be an appropriate award, but rather reviews the record to determine whether the trier of fact abused that discretion. Wainwright, 00-0492 at 6,774 So.2d at 74; Beausejour, 08-379 at 6,996 So.2d at 628.
In the present case, Ms. Romano was the only witness to testify at trial regarding her pain and suffering, and her medical records were admitted. At trial, Ms. Romano testified that she began to experience headaches, neck pain, and back pain after the accident. She treated with Dr. Haydel and Dr. Greenberg from UMarch 12, 2008, through November 16, *694 2009, for her injuries. She saw other doctors during this time as well. However, Ms. Romano did not have any rehabilitation treatment from November 16, 2009, to March 3, 2010. Further, when Ms. Romano saw Dr. Vogel in March 2010, he recommended that she undergo further testing due to her complaints of unresponsiveness to conservative treatment. However, Ms. Romano did not submit to this testing, allegedly due to financial reasons.
The trial judge’s reasons for judgment reflect that she awarded general damages to Ms. Romano for a two-year period, which would have been from March of 2008 to March of 2010. Considering the subsequent gap in treatment and Ms. Romano’s failure to undergo the testing recommended by Dr. Vogel in March of 2010, the trial judge had a reasonable basis for finding that Ms. Romano was not entitled to damages for pain and suffering after this time. The trial judge apparently did not believe Ms. Romano’s testimony that she was in pain for over five years.
The trial judge awarded Ms. Romano $48,000.00 in general damages for the injuries she sustained in the accident. Considering the testimony and evidence in the record before us, we cannot say that the trial judge abused her discretion in awarding this amount of general damages. Accordingly, this assignment of error is without merit.
In her second assignment of error, Ms. Romano argues that the trial court erred in failing to award all of her medical expenses for over five years. In her third assignment of error, Ms. Romano contends that the trial judge erred in holding that a three and one-half month gap in treatment meant that Ms. Romano was healed. These assignments are related and will be addressed together.
| aSpecial damages are those which either must be specifically pled or have a “ready market value,” such that the amount of the damages theoretically may be determined with relative certainty. McGee v. AC and S, Inc., 05-1036, p. 3 (La.7/10/06), 933 So.2d 770, 774. Medical expenses are a component of special damages. Id.; Kaiser v. Hardin, 06-2092, p. 11 (La.4/11/07), 953 So.2d 802, 810. The plaintiff bears the burden of proving special damages by a preponderance of the evidence. Wainwright, 00-0492 at 10,774 So.2d at 77; Beausejour, 08-0379 at 6-7, 996 So.2d at 628. In reviewing the trial court’s factual conclusions with regard to special damages, an appellate court must satisfy a two-step process based on the record as a whole: there must be no reasonable factual basis for the trial court’s conclusions, and the finding must be clearly wrong. Kaiser, 06-2092 at 11-12, 953 So.2d at 810.
Ordinarily, a plaintiff may recover reasonable past medical expenses that she incurs as a result of an injury. It is the burden of the plaintiff to prove the existence of the injuries and the causal connection between those injuries and the accident. Taylor v. State Farm Mut. Auto. Ins. Co., 01-317, p. 5 (La.App. 3 Cir. 10/3/01), 796 So.2d 802, 807. The plaintiff must show through medical testimony that it is more probable than not the subsequent medical treatment was necessitated by the trauma suffered in the accident. Id.
In the present case, the trial judge awarded special damages to Ms. Romano in the amount of $14,243.00 for the medical expenses she incurred as a result of the accident. This award did not include medical expenses for her treatment with Dr. Morris at the pain management clinic in Mississippi, the expenses for the medication prescribed by Dr. Morris, or the rehabilitation treatment performed by Dr. *695 Theriot from March of 2010 to September of 2010. The trial judge found that Dr. Morris’ treatment of Ms. Romano was du-plicative and excessive, as Ms. |1ftRomano was being treated by local doctors for much of the same time. She also found that the medication prescribed by Dr. Morris was unnecessary or given in addition to medication provided by other treating physicians. Finally, the trial judge found that the rehabilitation treatment from Dr. Theriot was not necessary, because there was a three and one-half month gap in treatment from November of 2009, when she discontinued treatments with Dr. Haydel and Dr. Greenberg, to March of 2010, when she began treating with Dr. Theriot. The trial judge found that this gap in treatment would not exist if Ms. Romano was truly in need of rehabilitation treatment.
Ms. Romano did not present the testimony of any of her doctors at trial; rather, she relied on her own testimony and medical records to prove her case. The record reveals that Ms. Romano was treated by Dr. Haydel, a chiropractor, and Dr. Greenberg, a medical doctor, consistently from March 12, 2008 through November 16, 2009. During that time, Ms. Romano saw other physicians as well, such as Dr. Kang. Ms. Romano received prescriptions for pain medication from Dr. Greenberg and Dr. Kang during her treatment. Ms. Romano also saw Dr. Morris, a pain management doctor from April 2, 2008, up until the time of trial and consistently received prescriptions for pain medication from him as well. The trial judge found that Dr. Morris’ treatment was du-plicative and the medication he prescribed was unnecessary or given in addition to medication provided by other treating physicians. Although Ms. Romano was treated by Dr. Morris after her treatment with local physicians was discontinued, the trial judge clearly did not believe that Ms. Romano proved that Dr. Morris’ treatment was necessary or that she was in need of continuous pain medication due to the accident.
As stated above, the plaintiff has the burden of proving special damages by a preponderance of the evidence. Based on the record before us, we find no basis to disturb the trial judge’s finding that Ms. Romano did not prove by a preponderance of the evidence that she was entitled to special damages for the medical treatment provided by Dr. Morris or for the medications he prescribed. The trial judge’s findings were not unreasonable or clearly wrong.
In addition, the trial judge did not award special damages for the medical expenses incurred for rehabilitation treatment with Dr. Theriot, a chiropractor, from March 3, 2010, to September 22, 2010. The trial judge found that Ms. Romano would not have discontinued rehabilitation treatment from November 16, 2009 to March 3, 2010, if she was still in need of rehabilitation treatment.
While a gap in treatment does not necessitate a finding that the medical treatment is not related to an accident, a trial court may use a gap in treatment as a factor in analysis when making its decision as to whether medical treatment is related to an accident. See Griffin v. Kurica, 03-190 (La.App. 5 Cir. 6/19/03), 850 So.2d 807. Considering the record before us, we cannot say that the trial court was unreasonable or clearly wrong in finding that Mr. Romano did not prove that she was entitled to medical expenses for her treatment with Dr. Theriot. Thus, we find that Ms. Romano’s second and third assignments of error are without merit.

*696
DECREE

For the foregoing reasons, we affirm the trial court judgment awarding special damages in the amount of $14,243.00 and general damages in the amount of $48,000.00, for a total award of $62,243.00 in damages.

AFFIRMED.