STEPHEN J. WINDHORST, Judge.
|Jn this suit for damages, plaintiff Shone Bush, appeals from the trial court’s judgment allocating fault and awarding damages. We affirm the judgment of the trial court.
' On April, 3, 2010, Mr. Bush was a guest passenger in a red Camaro driven by Todd Williams. Todd Williams drove to the parking lot of a McDonald’s Restaurant in Marrero, Louisiana.’ As Todd Williams was proceeding in the lane of travel to a parking place, he struck a gate/ramp extended from the rear of the defendant’s delivery truck, sustaining damage to the upper quadrant of the driver’s side windshield, frame and dashboard.
Both Mr. Bush and Todd Williams filed suit for. damages against Mid-South Baking Company, LLC, owner of the truck, and its insurer,., Continental. .Insurance Company (“Mid-South”). After a trial on the merits, the court found in favor of the plaintiffs, and allocated fault at 75% to Todd -Williams and 25% to Mid-South. The trial court awarded damages to Mr. Bush in the amount of $33,511.50 and to Todd Williams in the amount of $2;376.25. Mr. Bush appeals from the trial court’s decisions on both liability and damages. Todd Williams did not appeal.

DISCUSSION

In its oral reasons for judgment, the trial court stated that it found that the car was travelling at a low rate of speed and that it was daylight and there were no weather impediments regarding Todd Williams’ ability to see the gate/ramp. The 1 atrial court further stated that even though the evidence supported a finding that the truck drivers did not follow company policy, in placing orange cones, the gate/ramp was a fairly apparent object that should have been seen prior to the impact.
With regard to damages, the trial court found that Mr. Bush’s treatment from *1173 April 6, 2010 to October 25, 2010 was related to the accident; however his subsequent treatment and recommendations regarding surgery were not causally related to the accident. Accordingly, the court awarded general and special damages for injuries treated only during the time period between April 6, 2010 and October 25, 2010.
This Court’s standard of review was stated in Aderholt v. Metro Sec., Inc., 14-880 (LaApp. 5 Cir. 03/25/15), 169 So.3d 635, 642, as follows:
It is well settled that a court of appeal may not set aside a trial court’s or a jury’s finding of fact in the absence of manifest error or unless it is clearly wrong. Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). In order to reverse a factual determination by the trier of fact, the appellate court must apply a two-part test. First, the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court. Second, the appellate court must further determine that the record establishes that the finding is clearly wrong or manifestly erroneous. Stobart v. State through Dept. of Transp. and Dev., 617 So.2d 880, 882 (La.1993). In essence, this test means a reviewing court must do more than simply review a record for some evidence which supports the trial court’s finding; it must determine that the record, as a whole, establishes the trial court was justified in its conclusion. Royal Oldsmobile Co. v. Heisler Properties, L.L.C., 12-608 (La. Ap. 5 Cir. 5/16/13), 119 So.3d 84, 94.
Where two permissible views of the evidence exist, the factfinder’s choice between them cannot be manifestly erroneous. Where the factfinder’s conclusions are based on determinations regarding the credibility of the witnesses: the manifest error standard demands great deference to the trier of fact because only the trier of fact can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener’s - understanding and belief in what'was said. Rosell v. ESCO, 549 So.2d at 844; Aleman v. Allstate Ins. Co., 04-948 (La.App. 5 Cir. 1/11/05), 894 So.2d 382, 384.
^LIABILITY
The trial court assessed liability for the accident at 25% to defendant Mid-South and 75% to Todd Williams, as driver of the red Camaro. In his first assignment of error, Mr. Bush contends that .the trial court erred, in its assessment of'the percentages of fault against the parties.
Comparative negligence is determined by the reasonableness of the party’s behavior'' under the circumstances. Williams v. Walgreen La. Co., 14-716 (La. App. 5 Cir. 02/25/15), 168 So.3d 812, 826-827, writ denied, 15-0610, 15-0613 (La.06/01/15), 171 So.3d 262. The factfin-der’s allocation of comparative negligence is a factual matter which will not be disturbed on appéal unless it is clearly wrong or manifestly erroneous. Id. In determining whether the trier of fact was clearly wrong in its allocation of fault, an appellate court is guided by the factors set forth in Watson v. State Farm Fire and Cas. Ins. Co., 469 So.2d 967, 974 (La.1985), including: (1) whether the conduct was inadvertent or involved an awareness of the danger; (2) how great a risk was created by the conduct; (3) the significance of what was sought by the conduct; (4) the capacities of the actors; and (5) any extenuating factors which might require the actor to proceed with haste, without proper thought. Prejeant v. Gray Ins. Co., 15-87 (La.App. 5 Cir. 09/23/15), 176 So.3d 704, 709.
*1174 The testimony at trial established that, at the time of the accident, there was daylight and the weather conditions were good. Todd Williams testified that he was driving at five miles per hour, attempting to get to a parking space opposite the truck. He stated that he did not see the truck’s gate/ramp, and that he did not see any cones or reflective tape before he hit the gate/ramp. Todd Williams further testified that there was insufficient room for him to pass the truck without hitting [fithe gate/ramp. Todd Williams testified that he was paying attention and was not on his cell phone at the time of the accident.
Mr. Bush testified that the car was trav-elling at ten to fifteen miles per hour. Mr. Bush testified that he saw the truck, but did not see the lift gate/ramp protruding from the rear, nor did he see cones or lights marking the protruding ramp. Mr. Bush also stated that Todd Williams did not have enough room to go around the truck’s ramp. Mr. Bush stated that, at the time of the accident he saw two truck drivers; one was standing inside the back cargo area and the other was standing in front of the restaurant. Mr. Bush testified that he saw the gate/ramp immediately before the accident, and he grabbed Todd Williams. Mr. Bush also stated that Todd Williams was not on his cell phone at the time of the accident.
The deposition of Randy Williams, one of two drivers in the truck that day, was entered into evidence. He was driving at that time, and Fred Houston was in the passenger seat. Randy Williams parked the truck at the place designated by McDonald’s. He placed one orange cone by the gate/ramp, and was in the process of getting ready to place the second cone, while Mr. Houston was delivering baked goods to the restaurant. A red Camaro drove past him, almost hitting him, and ran over the cone prior to striking the gate/ramp. Mr. Houston, who was inside the trailer when the accident occurred, talked to the driver. Randy Williams stated that he heard the driver tell Mr. Houston that he, the driver, was on his cell phone and did not see the gate/ramp. Randy Williams was shown a picture of the accident at trial, and he circled an object that he stated was the cone that the driver of the red Camaro drove over.
Warren Donoway is the transportation safety and compliance advisor for Service First Distribution, the transportation arm of Mid-South Baking. He testified that Mid-South’s policy was to park in a place determined by the business |fiand then put out orange warning cones. He described the truck involved in the accident as less than eight feet, six inches wide, with a side door gate/ramp that is approximately five feet in length. Mr. Donoway viewed pictures of the accident, which consisted of a front view of the car, with the gate/ramp touching the windshield. The opposite side of the gate/ramp is visible to the camera. He could see reflective tape, in the shape of orange triangles, on the gate/ ramp. Mr. Donoway further stated that he saw a shape that appeared to be an orange cone protruding from under the driver side of the car behind the gate/ ramp, the same shape identified by truck driver Randy Williams. Mr. Donoway testified he did not believe that Mid-South’s drivers were at fault in the accident, and that he had had no problems with these two drivers during the time they were employed by Mid-South.
During the trial, pictures of the location of the accident, as well as the damaged vehicle and the truck gate/ramp, were introduced into evidence. The pictures show that there was sufficient room for Todd Williams to go around the extended gate/ ramp, had he seen it in time.
*1175 After considering the evidence, the court found that Todd Williams was negligent in failing to see the gate/ramp, which was an apparent object. The court further found some liability on the part of the defendants, since its drivers did not strictly follow company policy in placing the cones before making the delivery. The trial court noted that, in the accident photos, there is an object identified by two defense witnesses as the orange cone protruding from under the car. The trial court opined that it was the open driver side door, and not a cone. For these reasons, the court assessed 25% liability to the defendants, and 75% to plaintiff, Todd Williams, as driver of the red Camaro.'
|7In our review we find that a reasonable basis exists for the findings of the trial court. We find no manifest error in the trial court’s apportionment of fault in this matter. Mr. Bush’s first assignment of error is without merit.
DAMAGES
In his remaining assignments of error, Mr. Bush challenges the award of damages. He contends that the trial court erred in failing to apply the Housely presumption, in finding that his neck injury was not related to the accident and in failing to award all related medical expenses.
The trier of fact is given great and even vast discretion in setting general dam-. age awards, and an appellate court should rarely disturb an award of general damages. Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1260 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994); Nunnery v. City of Kenner, 08-1298, p. 10 (La.App. 5 Cir. 5/12/09), 17 So.3d 411, 418. The initial inquiry in appellate review of general damages is “whether the award for the particular injuries and their effects under, the particular circumstances on the particular injured person is a clear abuse of the ‘much discretion? of-the trier of fact.” Youn, 623 So.2d at 1260. In reviewing the factfinder’s assessment of general damages, the- court does - not decide what it considers to be an appropriate award, but rather reviews the record to determine whether the trier of fact abused that discretion. Wainwright [v. Fontenot], 00-0492 at 6, 774 So.2d [70] at 74 [ (2000) ]; Beausejour [v. Percy], 08-379 at 6, 996 So.2d [625] at 628 [ (La.App. 5 Cir. 10/14/08) ].
Romano v. Jefferson Parish Sheriff’s Office, 13-803 (La.App. 5 Cir. 03/26/14), 138 So.3d 688, 693, writ denied, 14-0700 (La.05/16/14), 139 So.3d 1028.
Mr. Bush testified that, when the accident occurred, glass flew into one of his eyes. Shortly after the accident, he started feeling pain in his neck, back, left leg, and right knee. On April 6, 2010, three days later, Mr. Bush sought treatment at West Jefferson Hospital’s Emergency Room, with complaints of eye irritation, and neck and back.pain.- Dr. Michael Vol-ner diagnosed a. corneal abrasion, prescribed Gentamicin, • and recommended that he seek follow-up care with an eye specialist. He further noted back and neck pain, prescribed Percocet, and recommended follow-up if the symptoms returned, worsened or failed to improve.
IsOn May 19, 2010, Mr. Bush went to Dr. Can N. Tran, an ophthalmologist. Dr. Tran observed a well-healed corneal scar. No further treatment was indicated for Mr. Bush’s eye injury.
On April 7,2010, Mr. Bush sought treatment at Westbank Health Care Center. Dr. Michael Chambers diagnosed paraspi-nous muscle strain, trapezius muscle strain, lumbar paraspinous muscular strain with left sciatica, -sacroiliac joint strain. Dr. Chambers instituted a course of thera *1176 py that included modality treatments, home exercise, and mediation consisting of Ultram. Mr. Bush returned to the clinic for treatment approximately 'every three weeks until October 25, 2010, when he was discharged from care. At that time, Dr. Chambers stated that Mr. Bush’s “Cervical strain and lumbar strain [are] at an acceptable degree of resolution.”
According to Mr. Bush, six months later he was Still in' pain. On April 6, 2011, Mr. Bush had an MRI of his lumbar spine. The results were normal,' showing no significantly low back problem, ’ On April 27, 2011, Mr. Bush returned to the Westbank Health Center with complaints of pain. Because he had reached the maximum benefit of care, he was réferred a neurosurgeon. -
Mr. Bush' then sought treatment with Dr. Lucienne Miranne, a neurosurgeon with Southern Brain and Spine. Mr. Bush was treated by Dr. Miranne three or four times from 2011 to 2014, Dr. Miránne’s notes of September 23, 2013 reflect that Mr. Bush stated that he had been injured in a' motor vehicle' accident. ■ Mr. Bush complained of persistent neck pain that seemed to radiate to low back. Dr. Mir-anne diagnosed possible cervical stenosis with cord compression, and recommended that an MRI be done.
An MRI of Mr. Bush’s cervical spine was done on January 8, 2014. Dr. Mir-anne’s review of the MRI found a central herniation at C4-5, C5-6, cervical Estenosis with persistent myelopathic findings, and pain consistent with disc hernia-tions. Dr. Miranne recommended surgery, based on Mr. .Bush’s assertions of pain numbness and other problems for the preceding three years. Dr. Miranne again saw Mr. Bush on September 5, 2014, and again diagnosed cervical stenosis with myelopathy. -He .again opined that Mr. Bush needed surgery and recommended a second MRI because the previous MRI was over 8 months old.
After suit was filed, at the request of the defense, an independent medical records review and an independent medical examination was conducted by Dr. Deepak Awasthi, a neurosurgeon.
In July of 2014, defendant sent Mr. Bush’s records to Dr. Awasthi for a medical records review. Dr. Awasthi opined that the recommended surgery is not causally related to the accident. According to the medical records, there was no description of any myelopathic signs after the accident and the bulk of the treatment was to the lumbar spine. Dr. Awasthi stated that if the spinal cord had been injured during the accident, it would have been evident soon after the accident. Dr. Awas-thi concluded that Mr, Bush’s neck symptoms and myelopathic symptoms are more likely related to the patients’ underlying cervical spondylosis and ongoing cord compression and not related to the auto accident.
On September 15, 2014, the independent medical examination of Mr. Bush was performed by Dr. Awasthi. Dr. Awasthi observed that Mr. Bush was symptomatic from cervical disc disease, and stable from the lumbar disc. Dr. Awasthi observed signs of radiculopathy and early myelopa-thy. Dr. Awasthi noted that Mr. Bush was not working prior to' the automobile accident and .had not worked since the accident. Dr. Awasthi repeated his conclusion that Mr. Bush’s neck and myelopathic symptoms are more likely related to the patient’s underlying | ^cervical spondylosis and ongoing cord compression, and not related to the auto accident.
At trial, Mr. Bush'testified that he had a work related accident in Pennsylvania after Katrina, when he dropped a box on his chest. -His work related accident occurred *1177 five years prior to the automobile accident that formed the basis for this suit.
On cross-examination, Mr. Bush admitted that he had prior felony convictions for burglary and narcotics. Mr. Bush further admitted that he had been receiving worker’s compensation benefits when the accident happened, however the details of that situation were not revealed.
In a suit for personal injuries, the plaintiff bears the burden of proving a causal connection between the -accident, and the complained-of injuries. Stoll v. Allstate Ins. Co., 11-1006, p. 11 (La.5/8/12), 95 So.3d 1089, 1095. The test for determining the causal relationship between the accident and subsequent injuries is whether the plaintiff proved, through medical testimony, that it was more probable than not that the subsequent'injuries were caused by the accident. Mart v. Hill, 505 So.2d 1120, 1127-1128 (La.1987); Maynor v. Vosburg, 25,922, p. 8 (La.App. 2 Cir. 11/28/94), 648 So.2d 411, 417-418, writ denied, 95-409 (La.4/28/95), 653 So.2d 590.
Stevenson v. Serth, 14-846 (La.App. 5 Cir. 03/25/15), 169 So.3d 612, 615. Whether an accident caused a person’s injuries is a question of fact which should not be reversed on appeal absent manifest error. Housley v. Cerise, 579 So.2d 973, 979 (La.1991); McKamey v. Carona, 14-388 (La. App. 5 Cir. 03/11/15), 169 So.3d 449, 459, writ denied, 15-0723 (La.06/01/15), 171 So.3d 933.
In oral reasons for judgment, the trial court found that Mr. Bush’s treatment from the date of the accident until October 25, 2010, when he was released from the West Jefferson Medical Center, was causally related to. the accident; however the remaining treatment was not.
InThe medical evidence at trial showed that Mr. Bush was treated for six months after the accident, and then he was released with satisfactory improvement. Mr. Bush did not seek treatment for six months following his release. According to Dr. Awasthi, if Mr. Bush had suffered cervical-injury in the automobile accident, the symptoms would have shown up immer diately, and not six’ months later. The trial court could have found these factors significant in making his findings of fact.
Credibility determinations, including evaluating expert witness testimony, are for the trier of fact. Detraz v. Lee, 05-1263 (La.01/17/07), 950 So.2d 557, 564. While a gap in treatment does not necessitate a finding that the medical treatment is not related to an accident, a trial court may use a gap in treatment as .a factor in analysis when making its decision as ■ to whether medical treatment is related to an accident. Romano, 138 So.3d at 695; Griffin v. Kurica, 03-190 (La.App. 5 Cir. 6/19/03), 850 So.2d 807.
In connection with his argument that the trial court erred in its award of- damagesj plaintiff alleges that the trial court erred in failing to apply the Housley presumption.
There is a causal presumption that:
[a] claimant’s disability is presumed to have resulted from an accident, if before the accident the injured-person was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest ..themselves , afteiwards, providing that the medical evidence shows there to be a reasonable possibility of causal connection between the accident and the disabling condition. Housley v. Cerise, 579 So.2d 973, 980 (La.1991).
Clement v. Carbon, 13-827 (La.App. 5 Cir. 04/09/14), 153 So.3d 460, 464.
*1178 Applicability of the Housley presumption is only appropriate when it has been established that plaintiff was healthy before the accident, was unhealthy afterwards, and there is a reasonable possibility of a causal connection between the li2accident and the injury. Romero-Zambrano v. Bell, 14-404 (La.App. 5 Cir. 11/25/14), 165 So.3d 143, 146.
This [Housley ] presumption is rebut-table, and the causal link can be broken if the opposition successfully rebuts plaintiffs evidence. The issue of whether plaintiff is entitled to the benefit of this presumption is factual and is subject to the manifest error standard of review. If the jury’s findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse. Consequently, when there are two permissible views of the evidence, the fact finder’s choice between them cannot be manifestly erroneous or clearly wrong.
Seitz v. Scofield, 01-1295 (La.App. 5 Cir. 02/26/02), 812 So.2d 764, 768, writ denied, 02-0861 (La.05/24/02), 816 So.2d 855, citing Cooper v. United Southern Assur. Co., 97-0250 (La.App. 1 Cir. 9/9/98), 718 So.2d 1029.
Here, Mr. Bush presented no evidence to show that he was healthy prior to the accident. To the contrary, Mr. Bush admitted that he was receiving worker’s compensation at the time of the automobile accident, which indicates that he had some kind of injury that made him unable to work. We find that the Housley presumption was not applicable in this case.
We find no manifest error in the trial court’s award of damages to Mr. Bush in this case. Mr. Bush’s remaining assignments of error are without merit.

CONCLUSION

For the above discussed reasons, the judgment of the trial court is affirmed. All costs are assessed against plaintiff, Shone Bush.
AFFIRMED.