ELLA D. WILSON

VERSUS

CANAL INSURANCE COMPANY, JORDAN
CARRIERS, INC. AND DWAYNE S. GORDON

NO. 21-CA-676

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 746-041, DIVISION "K"
HONORABLE ELLEN SHIRER KOVACH, JUDGE PRESIDING

November 23, 2022

**STEPHEN J. WINDHORST**
**JUDGE**

Panel composed of Judges Robert A. Chaisson,
Stephen J. Windhorst, and Hans J. Liljeberg

<u>**AMENDED, AND AFFIRMED AS AMENDED**</u>
   **SJW**
   **RAC**
   **HJL**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Jalisa Walker
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLANT,
ELLA D. WILSON
    Andrew A. Lemmon
    Jack W. Harang
    Richard J. Richthofen, Jr.

COUNSEL FOR DEFENDANT/APPELLEE,
CANAL INSURANCE COMPANY, DWAYNE GORDON, AND JORDAN
CARRIERS, INC.
    Elton F. Duncan, III
    Kelley A. Sevin

COUNSEL FOR DEFENDANT/APPELLEE,
WESTCHESTER SURPLUS LINES INSURANCE COMPANY
    Daryl J. Daigle

**WINDHORST, J.**

In this personal injury case, plaintiff/appellant, Ella Wilson, seeks review of the trial court's June 3, 2021 judgment,[1] awarding her $500,000.00 in general damages, $204,487.03 for medical expenses and $89,250.00 for past and future earnings, but allocating eighty percent (80%) of the fault to her and 20% of the fault to defendant Dwayne Gordon. For the reasons that follow, we affirm the Amended Judgment signed November 9, 2022 in all respects, except to amend the trial court's judgment to correct a mathematical error, and consequently recalculate Ms. Wilson's award for past and future lost wages to $123,900.00.

**EVIDENCE and PROCEDURAL HISTORY**

This case involves injuries allegedly resulting from an automobile accident on September 30, 2014 involving Ms. Wilson and Mr. Gordon, who was employed by Jordan Carriers, Inc. The accident occurred while Ms. Wilson was acting as an escort in a convoy for Mr. Gordon who was hauling steel pipes over 90 feet long on a tractor and trailer from Mississippi to Belle Chasse, Louisiana.

The individuals involved began the convoy in Mississippi with two trucks and trailers and four escort cars as required by Mississippi law for loads of this size. Louisiana law only required two escorts for this size load. As a result, upon reaching the Louisiana state line, two of the escorts were released pursuant to Jordan Carriers' directive. Before the convoy departed, all convoy drivers had discussed and agreed upon a plan for the convoy, including exiting the Westbank Expressway in Gretna, Louisiana where the accident occurred.

Brent Doucet drove the lead tractor trailer, and Mr. Gordon drove the second tractor trailer. Ms. Wilson and Leonard Ballard escorted the tractor trailers in the convoy. Upon exiting the Westbank Expressway, the escort vehicles driven by Ms.

---

[1] The original June 3, 2021 judgment did not dispose of the claim against Westchester Surplus. Pursuant to the requirements of La. C.C.P. art. 1918, we ordered that the judgment be amended to rule on that claim. The Amended Judgment was signed November 9, 2022. It is that judgment to which we refer hereafter.

Wilson and Mr. Ballard took positions straddling the three right lanes to stop westbound traffic on the ground level of the Westbank Expressway. The two tractor trailers proceeded to the intersection in the far left two turn lanes to make the left turn onto Belle Chasse Highway. The lead tractor trailer driven by Mr. Doucet made the left turn without incident. However, as Mr. Gordon was turning left, following the same track as Mr. Doucet, the steel pipes on the rear of his trailer struck the driver side cab and window of Ms. Wilson's pickup truck. As a result of the accident, Ms. Wilson's left arm was crushed and severely injured.

Ms. Wilson filed suit against Jordan Carriers, Mr. Gordon, Canal Insurance Co., and Westchester Surplus Lines Insurance Co. ("Westchester Surplus"), alleging injuries to her left arm, shoulder, and body as a whole. Trial of the merits took place on May 10-13 and May 17, 2021. Participants in the convoy, witnesses to the accident, and experts testified, and voluminous documentary evidence was admitted.

According to the medical records, the injury to Ms. Wilson's arm required multiple surgeries, and caused infections requiring extensive medical care and severe chronic pain for years. This injury also left her permanently disfigured and disabled. Ms. Wilson was no longer able to work, lost her business, and struggled emotionally, physically, and financially because of the severity of her injury.

At trial, Mr. Ballard, the other escort driver in the convoy, testified that before the convoy left Mississippi, the drivers discussed the plan to transport the pipes to make sure everyone knew the whole plan. With regard to when the accident occurred, he testified that Ms. Wilson was supposed to be behind Mr. Gordon, right at the end of the pipes behind him, and that if she would have stayed there, she would have been safe. According to Mr. Ballard's testimony, Ms. Wilson moved up to the intersection when Mr. Gordon started moving forward instead of allowing both trucks to clear the intersection first. As he saw the pipes swinging wide, he attempted to contact Ms. Wilson on the CB radio to tell her to move, but the crash occurred

before he could. He then informed Mr. Gordon by CB what had happened, and they hurried over to Ms. Wilson's truck to see if she was OK. Mr. Ballard testified that after the accident she was talking, and that "she said it's my fault I messed up."

Mr. Timothy Rhoto, a fireman who was at the red light at Lafayette Street and the Westbank Expressway when the accident occurred and witnessed the accident, also testified at trial. He stated that he saw the escort truck coming so he waited because he figured she was going to need the right of way, and that when they made the turn he saw the rear of the truck hit Ms. Wilson. According to his testimony, Ms. Wilson was stopped in place for roughly 30 seconds before the impact. When Mr. Rhoto checked on Ms. Wilson after the accident, she was coherent and in severe pain because of her arm.

Officer Robert Faison responded to the accident and investigated at the scene. At trial, Officer Faison testified that after gathering all the information, he thought Ms. Wilson should have paid a little more attention and put her vehicle in a position where she would have avoided the impact. Officer Faison testified that he spoke to Ms. Wilson at the scene of the accident, that she was coherent, and that he never observed her lose consciousness. Officer Faison noted in his report that Ms. Wilson stated the incident was her fault, and that she did not give enough clearance for Mr. Gordon's vehicle to turn and clear the intersection as well as her vehicle.

Mr. Jeffrey Kidd, accepted as an expert in accident investigation, reconstruction, rules, and regulations, evaluated the cause of the accident by inspecting and scanning the accident site and the photographs of the vehicles, reviewing the depositions and documents provided, and considering the measurements of the tractor and trailer. It was Mr. Kidd's opinion that Mr. Gordon followed the same path as the lead tractor trailer driven by Mr. Doucet, and that Ms. Wilson moved from her previously stopped position forward and closer to the intersection by the bus stop. He stated that Ms. Wilson violated her duties as an

escort driver by moving closer to the intersection, and by placing herself at risk of being struck by the swing of the pipes on the oversized load.

After a bench trial, the trial court found plaintiff 80% at fault and defendant driver Dwayne Gordon 20% at fault. The trial court awarded plaintiff $500,000.00 in general damages, $204,487.03 for medical expenses and $89,250.00 for past and future earnings. Applying the comparative fault distribution to the award, plaintiff was awarded a total of $158,747.41 in damages.

In this appeal, Ms. Wilson challenges the trial court's allocation of fault to her and claims the damage award is inadequate. Defendants/appellees challenge the allocation of fault to Mr. Gordon and claim the general damage award is excessive.

**ASSIGNMENTS of ERROR**

Ms. Wilson asserts the trial court erred (1) in allocating 80% of the fault to her; (2) in finding her back injury, brain injury, and other diagnoses related to depression were not caused by the accident; and (3) in its calculation of lost earning capacity. Defendants answered the appeal, asserting that the trial court erred in not allocating 100% of the fault to Ms. Wilson and that the award of general damages is excessively high.

**LAW and ANALYSIS**

A court of appeal may not set aside a trial court's findings of fact in the absence of manifest error or unless they are clearly wrong. Bonck v. State Farm Mut. Auto. Ins. Co., 18-446 (La. App. 5 Cir. 12/27/18), 263 So.3d 505, 507, writ denied, 19-148 (La. 3/18/19), 267 So.3d 92. Under the manifest error standard, a determination of fact is entitled to great deference on review. Garcia v. City of Kenner, 20-378 (La. App. 5 Cir. 12/22/21), 334 So.3d 1004, 1008, writ denied, 22-273 (La. 4/12/22), 336 So.3d 87. In order for the appellate court to reverse a trial court's finding of fact, the appellate court must review the record in its entirety and (1) find that a reasonable factual basis does not exist for the finding, and (2) further

determine that the record establishes that the trier of fact is clearly wrong or manifestly erroneous. Bonck, 263 So.3d at 507. Where a conflict in the testimony exists, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed, even though the reviewing court may feel that its own evaluations and inferences are more reasonable. McGlothlin v. Christus St. Patrick Hosp., 10-2775 (La. 7/1/11), 65 So.3d 1218, 1231.

**Allocation of Fault**

Ms. Wilson asserts the trial court's allocation of fault is clearly wrong based on Fireman Rhoto's testimony. In answer to the appeal, defendants assert the trial court was manifestly erroneous in allocating 20% of the fault to Mr. Gordon because the accident was caused by Ms. Wilson moving into Mr. Gordon's swing path. Apportionment of fault is a factual question and is governed by the manifest error standard of review on appeal. Raspanti v. Liberty Mut. Ins. Co., 05-623 (La. App. 5 Cir. 1/31/06), 922 So.2d 631, 633, writ denied, 06-476 (La. 5/5/06), 927 So.2d 314.

In its reasons for judgment, the trial court provided a well-reasoned analysis for its allocation of fault based on the testimony and evidence presented. The court found it "more probable than not that plaintiff deviated from the prearranged plan and moved her vehicle too far up toward the intersection after Doucet completed his turn." The court relied on Mr. Gordon's and Mr. Ballard's testimony that they last saw plaintiff stopped near the trailer axle of Mr. Gordon's vehicle, but that she did not stay in this location and, when she was hit, she was almost entirely in the intersection. The trial court considered that because there was a careful plan in place and discussed with all participants before the trip, Mr. Gordon did not expect Ms. Wilson to be in a location other than agreed to pursuant to the designated plan.

As a result of the trial court's conclusion that Ms. Wilson made a mistake and moved forward too soon, and Mr. Gordon did not anticipate her movement and did

not see her, the trial court allocated Ms. Wilson 80% of the fault. The court assessed the remaining 20% of the fault to Mr. Gordon for failing to watch for unexpected danger. The court reasoned that because Mr. Gordon was transporting an oversized load that posed a potential danger to all vehicles, he had a duty to watch all mirrors and the back of his truck to make sure his path remained clear.

In evaluating whether the factfinder's allocation of fault is clearly wrong or manifestly erroneous, the appellate court is guided by the factors set forth in Watson v. State Farm Fire and Casualty Insurance Co., 469 So.2d 967 (La. 1985). In assessing comparative fault, the following factors should be considered: (1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought. Id. at 974. In evaluating comparative negligence, courts consider the reasonableness of the party's behavior under the circumstances. Bush v. Mid-S. Baking Co. LLC, 15-540 (La. App. 5 Cir. 5/26/16), 194 So.3d 1170, 1173.

This case involves a determination made primarily on the basis of the credibility of the witnesses. The trial court made a credibility determination of the testimony of all witnesses presented at trial. Where two permissible views of the evidence exist, the choice between them made by the trier of fact cannot be manifestly erroneous. Where the factual conclusions are based on credibility determinations of the witnesses, the manifest error standard demands great deference to the trier of fact because only the trier of fact can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what was said. Id.

Based on the evidence and the testimony, we cannot find the trial court's conclusion that Ms. Wilson moved out of her agreed-upon placement and disrupted

the plan among the various participants is manifestly erroneous. Mr. Gordon's and Mr. Ballard's testimony supports this conclusion. According to the testimony, Ms. Wilson was supposed to stay in place until both trucks completed their turns, and that if she had stayed behind the truck, she would not have been hit. For an unknown reason, however, she moved forward and was not where Mr. Gordon thought she would be when he made the turn and the pipes struck her vehicle. As recognized by the trial court, the damage to Ms. Wilson's vehicle does not support a conclusion that Mr. Gordon's load hooked and dragged her vehicle into the intersection as opposed to her moving forward into a spot different from the agreed-upon plan.

In addition, Mr. Kidd, an expert in accident investigation and reconstruction, concluded after his investigation that Ms. Wilson moved out of the position designated for her according to the plan. Officer Faison, after his investigation, also concluded that Ms. Wilson failed to put her vehicle in a position where she could have avoided the impact. Furthermore, Officer Faison and Mr. Ballard stated that after the accident Ms. Wilson said the accident was her fault.

Applying the standard of review and considering the above and the entire record, we do not find the trial court's conclusions and/or the allocation of 80% of the fault to Ms. Wilson to be manifestly erroneous or clearly wrong.

We also cannot say the trial court's allocation of 20% of the fault to Mr. Gordon is manifestly erroneous or clearly wrong. Under these particular circumstances, the trial court properly recognized Mr. Gordon's responsibility given the enormity of the task at hand and the duty to always maintain a look out for potential risks. For those who operate motor vehicles, the first duty is to keep a sharp lookout ahead to discover the presence of those who might be in danger. Deck v. Page, 77 So.2d 209, 212 (La. Ct. App. 1955). The driver's duty to be on the alert and keep a proper lookout never ceases. Potomac Ins. Co. v. City of Alexandria, 66 So.2d 22, 24 (La. Ct. App. 1953). Mr. Gordon was transporting an oversized load

that posed a significant danger to all vehicles near his trailer. He had a duty to maintain a close watch and make sure no one was in his path.

For the reasons stated and those in the trial court's reasons for judgment, we find no manifest error in the trial court's allocation of fault.

**Damages**

Ms. Wilson asserts the trial court erred in finding that her traumatic brain injury, DSM V diagnoses, and back injuries were not related to the accident, and claims that she is entitled to damages for these injuries. In answer to the appeal, defendants assert that the general damage award is excessive.

With regard to damages, the trial court concluded that Ms. Wilson suffered an extremely traumatic injury to her left arm requiring extensive medical care and leaving her permanently disfigured and disabled. The court believed the arm injury caused Ms. Wilson considerable pain and suffering and contributed to her depression following the accident. The court awarded her $500,000.00 in general damages for the injuries to her left arm.

The trial court, however, found that the injuries to Ms. Wilson's lower back and her traumatic brain injury were not caused by the accident. The court pointed out that Ms. Wilson did not complain of back pain until June 2015, almost nine months after the accident, and that a lumbar MRI taken in August of 2015 showed degenerative changes in her lower spine. In addition, the court noted that the evidence indicated she had a history of medical treatment for lower back pain. The trial court did not award special or general damages for Ms. Wilson's back injury.

As to Ms. Wilson's traumatic brain injury, the trial court found that there was insufficient evidence to link this injury to the accident because immediately following the accident she was alert and talking. The trial court also relied on Ms. Wilson's post-accident medical records from West Jefferson Medical Center which indicated there was no head injury or loss of consciousness, as well as the fact that

Ms. Wilson first complained of a brain injury in mid-2019, almost five years after the accident.

In a personal injury suit, the plaintiff bears the burden of proving a causal connection between the accident and the alleged injuries. Jackson v. Drachenburg, 19-345 (La. App. 5 Cir. 1/8/20), 288 So.3d 289, 293; Hunter v. Terrebonne, 18-134 (La. App. 5 Cir. 12/27/18), 263 So.3d 993, 997, writ denied, 19-144 (La. 3/18/19), 267 So.3d 90. When a plaintiff alleges he has incurred medical expenses as a result of injuries suffered in an accident and that treatment is supported by a bill, that evidence is sufficient evidence to support an award for past medical expenses unless there is sufficient contradictory evidence or reasonable suspicion that the bill is not related to the accident. Jackson, 288 So.3d at 293; Boxie v. Smith-Ruffin, 07-264 (La. App. 5 Cir. 2/6/08), 979 So.2d 539, 548. Included under the heading of special damages are the plaintiff's medical expenses incurred as a result of the accident. Wainwright v. Fontenot, 00-0492 (La. 10/17/00), 774 So.2d 70, 74. General damages involve mental or physical pain or suffering, inconvenience, and the loss of enjoyment of life or lifestyle, which cannot be definitely measured in monetary terms. Giglio v. ANPAC Louisiana Ins. Co., 20-209 (La. App. 5 Cir. 12/23/20), 309 So.3d 416, 423. General damages are inherently speculative and cannot be fixed with mathematical certainty. Miller v. LAMMICO, 07-1352 (La. 1/16/08), 973 So.2d 693, 711.

Upon review, we do not find the trial court's conclusion that the accident did not cause Ms. Wilson's back injury or her traumatic brain injury manifestly erroneous. The record supports this conclusion.

When assessed by the West Jefferson Medical Center's EMT's following the accident on September 30, 2014, Ms. Wilson denied back pain. She also denied any injuries other than those to her arm on multiple occasions throughout her hospital stays and visits. Medical records show that Ms. Wilson first complained of back

pain on May 13, 2015, almost eight months after the accident at a New Beginnings appointment with a nurse practitioner. The report for this indicates that Ms. Wilson said she was having leg pain from a "disc in her back." In addition, Ms. Wilson did not mention back pain to her orthopedic surgeon, Dr. Keith Melancon, until June 22, 2015, which was six months into treatment with him. After her June 22, 2015 evaluation, Dr. Melancon noted Ms. Wilson's complaint of back pain that radiates down her right leg but that she had no real history of trauma.

As to Ms. Wilson's alleged brain injury, the record establishes that she was alert and talking immediately following the accident. In addition, Ms. Wilson's post-accident medical records from West Jefferson Medical Center indicate she sustained no head injury, and she did not lose consciousness. Thus, there is no evidence that she suffered a head injury during the accident. Further, her claims of a brain injury did not surface until mid-2019, almost five years after the accident. There is nothing before us to support that Ms. Wilson's brain injury would take up to five years to develop and cause symptoms.

Considering these facts, we cannot say the trial court's conclusion that there is insufficient evidence to link Ms. Wilson's back and/or brain injury to the accident is manifestly erroneous. Thus, we find no error in the trial court's refusal to award Ms. Wilson damages for these injuries. In addition, the trial court's reasons for judgment indicate it recognized Ms. Wilson suffered from depression and, therefore, conclude that the trial court included damages for diagnoses related thereto in the amounts awarded.

Defendants assert that the general damages award of $500,000.00 for Ms. Wilson's arm injury is excessive. Louisiana jurisprudence has consistently held that much discretion is left to the judge or jury in the assessment of damages, and upon appellate review such awards will be disturbed only when there has been a clear abuse of that discretion. Theriot v. Allstate Ins. Co., 625 So.2d 1337, 1340 (La.

1993); <u>Tauzier v. Kraus</u>, 02-1015 (La. App. 5 Cir. 4/29/03), 845 So.2d 1208, 1211-1212, <u>writ denied,</u> 03-1475 (La. 9/26/03), 854 So.2d 367.

Only if an articulated analysis of the facts discloses an abuse of discretion may the award be considered either excessive or insufficient on appellate review. <u>Id.</u> If the appellate court determines that an abuse of discretion has been committed, it is then appropriate to resort to a review of prior awards, to determine the appropriate modification of the award. <u>Id.</u> Only when an award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances, should the appellate court increase or reduce the award. <u>Id.</u> Reasonable persons often disagree about the measure of general damages in a particular case. <u>Youn v. Maritime Overseas Corp.</u>, 623 So.2d 1257, 1261 (La. 1993); <u>Jackson</u>, 288 So.3d at 293.

The photographs depicting the severity of Ms. Wilson's arm injury were gruesome, and the medical records showing the surgeries and treatment Ms. Wilson endured in recovering from this injury establish that the recovery process was extensive and excruciating. The medical expenses for this injury alone amounted to $204,487.03. The record also shows that Ms. Wilson saw a counselor through at least December 2017 for severe depression related to this injury. Ms. Wilson's injuries left her permanently disfigured and disabled. After the accident, she was no longer able to work, lost her business, and struggled emotionally, physically, and financially because of the severity of her injury.

As the reviewing court, we must first find an abuse of the trial court's vast discretion in setting an award of damages before we can even consider prior awards to determine the appropriate modification of the award. <u>Theriot</u>, 625 So.2d at 1340. Because we do not find an abuse of the vast discretion afforded the trier of fact in setting the award for damages in this case, we cannot resort to a review of prior awards to consider whether or not the award in this case is excessive. We find no

merit in defendants' assertion that the trial court's general damage award in this case is excessive.

Finally, Ms. Wilson asserts she should have been awarded damages for lost earning capacity. To support a claim for loss of earning capacity, plaintiff must show, by a preponderance of the evidence, that her ability to earn a living is impaired. Younce v. Pac. Gulf Marine, Inc., 07-421 (La. App. 5 Cir. 1/22/08), 977 So.2d 117, 132, writ denied, 08-416 (La. 4/18/08), 978 So.2d 352. Before a plaintiff can recover for loss of future earning capacity, she must prove the loss, not with mathematical certainty, but with reasonable certainty. Id. Future loss of earnings is inherently speculative, and must be proved with a reasonable degree of certainty; purely conjectural or uncertain future loss earnings will not be allowed. Id.

Both parties submitted expert opinions regarding Ms. Wilson's economic losses due to the accident based on her life expectancy and her pre-accident income. Ms. Wilson's expert, Mr. David Doherty, estimated Ms. Wilson's work life expectancy following the accident as 11.8 years. Defendants' expert, Mr. Kenneth Boudreaux, estimated Ms. Wilson would work five years after the accident. The trial court agreed with Mr. Doherty's opinion that plaintiff could have continued to drive until she was 65 years old, for a remaining work life expectancy of 11.8 years.

As to Ms. Wilson's estimated annual income, Mr. Doherty used an implied annual income of $52,485.00 and reduced this amount to produce an after-tax counterpart of $45,639.00. Based on his calculations, he opined that Ms. Wilson's past, present, and future lost wages would have amounted to $515,575.00. The trial court did not agree that these numbers accurately reflected Ms. Wilson's actual earnings. Instead, the trial court agreed with Mr. Boudreaux's estimated annual income of $10,500.00. While Mr. Boudreaux agreed that Ms. Wilson reported $40,000.00 to $50,000.00 per year in revenue, he pointed out that after deducting business operating expenses, her actual earnings were greatly reduced, amounting to

approximately $10,500.00.  Accordingly, based in part on both experts, the trial court awarded lost earnings for 11.8 years at $10,500.00 per year.

La. C.C. art. 2324.1 provides that in the assessment of damages much discretion must be left to the judge or jury.  An appellate court may not set aside a trial court's finding of fact in the absence of manifest error or unless it is clearly wrong.  When two permissible views of the evidence exist, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong.  Perez through Molina v. Gaudin, 17-211 (La. App. 5 Cir. 11/29/17), 232 So.3d 1271, 1273.  In addition, the factfinder's decision to credit the testimony of one expert over another expert can virtually never be manifestly erroneous.  Snider v. Louisiana Med. Mut. Ins. Co., 14-1964 (La. 5/5/15), 169 So.3d 319, 323.

The record indicates the trial court fully considered the testimony of both experts and the evidence presented.  The court adopted opinions from both experts, stating reasonable grounds for those conclusions.  Thus, there is no basis upon which to conclude that the trial court's analysis for calculating lost wages is manifestly erroneous.

In calculating Ms. Wilson's lost earnings, the trial court stated that it multiplied $10,500.00 by 11.8 years and found past and future lost earnings amounted to $89,250.00, and the court awarded that amount.  However, we notice a mathematical error in that multiplying $10,500.00 by 11.8 years equals $123,900.00.  Accordingly, we correct this mistake and amend the trial court's judgment to award Ms. Wilson $123,900.00 for past and future lost wages.[2]

Ms. Wilson asserts that she is entitled to damages for lost earning capacity rather than the lost wages awarded by the court.  In this regard, she relies on law

_____

[2] An expert report submitted by David Doherty indicates that U.S. Bureau of Labor Statistics project Ms. Wilson's work life expectancy at the time of the accident to be 8.5 years.  Believing she could drive until 65, Mr. Doherty projected her work expectancy to be 11.8 years. In its Reasons for Judgment, the trial court agreed, and expressly found that she could have worked as an escort driver until 65 for an additional 11.8 years.

providing that earning capacity is not necessarily determined by actual loss, and that damages may be assessed for the deprivation of what the injured plaintiff could have earned even if she may never have seen fit to take advantage of that capacity. Ryan v. Zurich Am. Ins. Co., 07-2312 (La. 7/1/08), 988 So. 2d 214, 219; Folse v. Fakouri, 371 So.2d 1120 (La. 1979). A plaintiff's earning capacity at the time of the injury is relevant, but it is not necessarily determinative of his future ability to earn. Id.

While we recognize the distinction between lost wages and lost earning capacity, the evidence in the record regarding Ms. Wilson's potential lost earning capacity focuses on and is limited to her income before the accident and income potential as an escort driver in the future. There is no evidence that she had an "earning capacity" beyond that of an escort driver or intended to earn money in any other way. An award for plaintiff's lost earning capacity after a disabling injury cannot be based purely on speculation, conjecture, and probabilities. Woods v. Hall, 15-1162 (La. App. 1 Cir. 4/20/16), 194 So.3d 689, 694. Accordingly, we do not find Ms. Wilson entitled to an increased damage award for lost earning capacity.

**DECREE**

The trial court's Amended Judgment signed November 9, 2022 is affirmed in all respects, except that we amend the judgment to correct a mathematical error, and recalculate Ms. Wilson's award for past and future lost wages to $123,900.00, thus increasing total damages to $828,387.03. Reducing this amount by Ms. Wilson's comparative fault (80%), the recoverable amount is amended from $158,747.41 to **$165,677.41.**

**AMENDED, and AFFIRMED AS AMENDED**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
INTERIM CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**NOVEMBER 23, 2022** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL
PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 21-CA-676

### E-NOTIFIED

24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE ELLEN SHIRER KOVACH (DISTRICT JUDGE)
ANDREW A. LEMMON (APPELLANT)
DARYL J. DAIGLE (APPELLEE)

RICHARD J. RICHTHOFEN, JR.
(APPELLANT)
EDWIN G. PREIS, JR. (APPELLEE)

ELTON F. DUNCAN, III (APPELLEE)
JOHN P. GUILLORY (APPELLEE)

### MAILED

JACK W. HARANG (APPELLANT)
ATTORNEY AT LAW
116 WEST BELLVUE STREET
OPELOUSAS, LA 70570

KELLEY A. SEVIN (APPELLEE)
ATTORNEY AT LAW
400 POYDRAS STREET
SUITE 1200
NEW ORLEANS, LA 70130

SCOTT FALGOUST (APPELLANT)
ATTORNEY AT LAW
LEMMON LAW FIRM, LLC
15058 RIVER ROAD
HAHNVILLE, LA 70057