484 So.2d 177 (1986)
Donald J. COX, Sr., et al.
v.
Raymond S. CADARO, et al.
No. 85-CA-577.
Court of Appeal of Louisiana, Fifth Circuit.
February 13, 1986.
*179 Becnel, Landry & Becnel, Daniel E. Becnel, Jr., Reserve, for plaintiffs-appellees.
Lynn L. Lightfoot, Metairie, for Raymond S. Cadaro and Sentry Indem. Co., defendants-appellants.
Before BOUTALL, CHEHARDY and KLIEBERT, JJ.
CHEHARDY, Judge.
Plaintiff Donald J. Cox, Sr., individually and as administrator of the estate of his minor son Donald J. Cox, Jr., instituted this suit for damages arising out of an automobile accident which occurred on August 25, 1984 in LaPlace, Louisiana. Named defendants were Raymond S. Cadaro, driver of the other vehicle involved, his insurer, Sentry Indemnity Company, and State Farm Insurance Company, plaintiff's own insurer under the uninsured/underinsured motorist provision of the policy. State Farm was dismissed prior to trial, and defendants stipulated as to liability, past medical expenses, past loss of wages and property damage.
The only issues presented to the jury concerned further property damage, rental and storage fees, future medicals, future loss of wages, and pain and suffering.
Evidence on these issues was given by Mr. Cox and his son, and two medical experts (by deposition) Dr. V.J. Zeringue, an orthopedic surgeon who was Cox's treating physician, and Dr. Herbert K. Plauche, defendants' orthopedic expert.
Following trial, judgment was rendered in favor of plaintiffs as follows: Donald Cox, Sr., wrecker service ($125); property damage ($1,150); Donald Cox, Jr., lost wages ($448); future medical expenses ($36,000); future lost wages ($50,000), and pain and suffering ($87,500).
Defendants have appealed.
In this court they contend the trial court erred in:
1. admitting the deposition of Dr. Plauche into evidence;
2. improperly overruling their objection to plaintiffs' questioning of Dr. Zeringue;
3. the jury awards for future medical and future loss of wages; and
4. the quantum for pain and suffering.
The deposition to which appellants object is that of Dr. Plauche, their own medical expert. Plauche's deposition was taken on June 4, 1985 in Baton Rouge, Louisiana, for the purpose of perpetuating the doctor's testimony to be used at the trial.
On that date plaintiffs' attorney objected because it did not conform to the pre-trial order which provided that all depositions to be used at trial must be taken by May 15, 1985. The order also granted plaintiffs' request for a medical examination by a physician of their choice prior to April 1, 1985. The examination was not made until April 15. Plaintiffs' attorney further stated that his notice of deposition indicated it was for discovery purposes. (Defendants' copy of the notice indicated the deposition was to be taken for purposes of trial.)
Subject to these objections, the doctor's deposition was taken on June 4.
At the trial plaintiff withdrew his objections, explaining to the court that upon later examination of the record and its documents he had come to the conclusion that defendants did comply with the pre-trial order and therefore he would accept the deposition without objection.
Defendants did not have the deposition in court, did not plan to introduce it in view of plaintiffs' prior objections and had not subpoenaed the doctor to appear at the trial.
The court ruled that under LSA-C.C.P. art. 1428 plaintiffs had a right to use the deposition. He stated that if the deposition was not presented to the court plaintiffs could rely on the presumption that appellants' failure to call the witness was solely because of the adverse affect on its case. The deposition was subsequently introduced into evidence as a plaintiff exhibit.
Defendants-appellants contend the deposition should not have been introduced because *180 it did not comply with LSA-C.C.P. art. 1450, which governs such procedure.
In reviewing C.C.P. art. 1428 we conclude a typographical error must have been made as that article concerns supplementation of responses with which we are not here concerned. Therefore we do not believe this would have been the article upon which the trial court relied. However, a deposition to perpetuate testimony taken under LSA-C.C.P. arts. 1429-1431 may be used in any action involving the same subject matter subsequently brought in any court in this State in accordance with the provisions of C.C.P. art. 1450, which provides in pertinent part:
"(3) The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds: (a) that the witness is dead; or (b) that the witness is at a greater distance than one hundred miles from the place of trial or hearing, or is out of this state, unless it appears that the absence of the witness was procured by the party offering the deposition; or (c) that the witness is unable to attend or testify because of age, illness, infirmity, or imprisonment; or (d) that the party offering the deposition has been unable to procure the attendance of the witness by subpoena; or (e) upon application and notice, that such exceptional circumstances exist as to make it desirable, in the interest of justice and with due regard to the importance of presenting the testimony of witnesses orally in open court, to allow the deposition to be used."
Appellee contends the deposition does not comply with any part of the entire article. Appellant contends C.C.P. art. 1450(3)(e) is applicable because this constitutes "exceptional circumstances ... in the interest of justice."
We do agree that this situation does constitute exceptional circumstances, but these circumstances were initiated by plaintiffs' counsel who refused at the deposition to recognize it for any purposes other than that of discovery.
We are of the opinion that his withdrawal of this objection after the trial had begun came too late, and that the deposition should not have been admitted in evidence.
However we do agree with the trial court ruling that if the deposition was not introduced in evidence, plaintiff could rely on the well-settled rule to the effect that where a litigant fails to produce evidence or witnesses available to him and no reasonable explanation is made therefor, the presumption arises that the production of such evidence or witnesses would have been unfavorable to his cause. Jackson v. Jackson, 212 So.2d 265 (La.App. 4th Cir. 1968); LSA-R.S. 15:432.
Relative to appellants' second contention, at the deposition of Dr. Zeringue, plaintiffs' medical expert, he was asked a series of hypothetical questions relative to his patient's probable future medical problems. Defendants' attorney objected at that time and renewed those objections at trial. His objections were predicated upon the fact that no proper foundation was laid and that the questions were overly speculative.
The trial court overruled the objections stating it would cover the objections in its general charge that the jury could believe or disbelieve any expert, just as they could any other witness.
The brief series of questions to which defendants object concern the future expense and care plaintiff would need if he developed arthritis, the probability of his developing arthritis, and if so, at what age.
We note that there was also testimony that plaintiff could develop arthritis without having ever had an accident or that he may not develop it at all. Consequently we find no error in the ruling of the trial court on this objection.
Relative to appellants' third contention, Dr. Zeringue saw plaintiff on August 30, 1984 relative to this accident. A history taken at that time revealed plaintiff sustained an injury to his right and left knees, which hit the dashboard. Examination disclosed tenderness and swelling over both knees with ecchymosis (black and blue discoloration) *181 over the medial aspect of the right knee and tenderness over the medial aspect of the left knee. Motion tests and x rays taken of both knees were within normal limits. No other diagnostic tests were performed.
The diagnosis was contusion of the right and left knees and a medial collateral ligamentous strain to the right knee. The prognosis after the first visit was good. An anti-inflammatory creme, Mobisyl, was recommended, and a knee immobilizer (a brace) for the right knee to prevent flexion was prescribed. Plaintiff was told not to return to work.
Plaintiff was next seen September 6, 1984. He had full range of motion in both knees. The right knee was still tender over the medial collateral ligament, but there was decreased tenderness over the left knee. The doctor concluded plaintiff was improving but that he should not return to work. Heat was recommended, along with continued use of the immobilizer, removing it only to exercise the right knee.
When plaintiff returned September 20, there was only minimal tenderness over the right knee medial collateral ligament, and minimal tenderness over the left knee. A stress test, range of motion and a test for fluid and fusion were all satisfactory. The original swelling had subsided. He was advised to discontinue the use of the knee brace.
Dr. Zeringue recommended continued use of heat and increased activity with both knees. He was advised to return to work but to do no climbing. When last seen on October 11, 1984, plaintiff had satisfactory stability of ligaments of both knees and minimal tenderness over the medial aspect of the right knee. He was discharged as able to return to his regular work.
Plaintiff returned to the doctor as a result of another accident at work on December 31, 1984 wherein he injured his left knee, but these injuries were unrelated to the accident in suit. The medical expenses with which we are here concerned, from August 30 to October 11, 1984 for examination and treatment by Dr. Zeringue, amounted to $302.
Plaintiff had an earlier episode of pain in his left knee on August 12, 1983. There was no injury at that time but he had suffered pain of unknown origin in that knee for the two previous weeks. The doctor found the left knee tender over the anterior medial aspect over the knee cap, or patella, if pressure was applied. The diagnosis at that time was patella chondromalacia (softening of the cartilage) and plica synovitis (inflammation of the synovial tissue).
Since plaintiff was a volunteer fireman, the doctor concluded this problem may have been due to climbing ladders. Exercise was prescribed, and heat and anti-inflammatory medication (Meclomen) and creme (Mobisyl) were prescribed. Plaintiff was told there was no need to return if he improved. The problem cleared and plaintiff did not return until after the accident in suit.
On December 31, 1984, after the injury in suit, plaintiff injured the inside aspect of his left knee while trying to push boxes along the floor at his work. This was a different type of injury than that sustained in the accident.
The injury in the automobile accident was a blow to the front side of the knee, whereas the injury in December 1984 was more of a strain due to stress.
In the automobile accident some of the ligaments in the right knee were strained. This will cause that knee to be more prone to giving way or to having another injury than a knee which would not have had a strain of those ligaments. This could lead to additional problems in the future, although they would probably not be of a serious nature.
However, because of the blow to the front part of the knee due to the accident plaintiff did sustain some injury to the cartilage, which probably would lead to early arthritis in both knees. He would then need conservative care as long as possible to maintain a functional knee joint, and if it *182 became too painful he would need surgical shaving of the cartilage or possibly an early joint replacement.
The cost of such surgery, including doctors' fees, would amount to $3,000 to $5,000 and medications would cost $1 to $2 per day. The arthritis could develop in plaintiff's mid-thirties or forties. The doctor did not regard plaintiff as a malingerer.
On cross-examination he agreed that it was possible plaintiff would not develop arthritis notwithstanding the accident. However, the doctor said it was more probable than not that plaintiff would develop early arthritis and that it would be attributable to injuries sustained in this accident and not his 1983 complaints, because plaintiff had improved from that incident and had not returned until after the automobile accident in 1984.
The doctor also listed numerous other causes of arthritis, such as bacterial or viral infection, metabolic conditions, such as gout or pseudogout or bleeding into a joint.
Because of the substantial award for pain and suffering and future medicals made by the jury, we have discussed Dr. Zeringue's testimony in detail. We have not discussed that of Dr. Plauche, inasmuch as we agree with defendant that his deposition should not have been introduced in evidence.
However, we note that in spite of its opposition to the introduction of Plauche's deposition, the defendants quote liberally from Plauche's opinions in their brief, including the fact that Plauche finds it more probable than not that plaintiff will have an early onset of arthritis, will probably need the operation described by Dr. Zeringue, and will need daily medication.
Rather than considering Plauche's deposition, we have, as stated previously, found that defendants have failed to overcome the presumption that had this doctor been called to testify, his testimony would have been unfavorable to their cause.
Plaintiff's own testimony relative to his injuries is that he was thrown forward in the car injuring his head, elbow, lip and both knees. His left knee hit the dashboard and his right knee hit the steering column. He was taken to the emergency room at River Parish Medical Center and told to see an orthopedic doctor if he continued to have trouble. He then saw Dr. Zeringue six days later.
In describing the difference between his knees before and after the accident he stated that as a volunteer fireman he is required to do a lot of bending, stooping and climbing and while he is doing this now he does have a considerable amount of pain which limits his ability to perform these functions. He also indicated that he has pain in his knees about four to five times per month when it flares up for a day or two. He is also concerned that it might affect his future employability. His elbow injury cleared up after one to two weeks. He still has a small lump on his lower lip from the accident and pain related to both knees, including intermittent swelling which he treats with heat. He did not have this problem prior to the accident.
Plaintiff states his activities have been restricted since the accident, although he is still able to hunt, fish and swim. He was and is employed as a stock clerk at T G & Y in charge of maintenance (painting, cleaning, etc.), but he is not able to kneel, bend and stoop with the same agility as prior to the accident.
We do note here that when plaintiff first consulted Dr. Zeringue in 1983, prior to this automobile accident, the doctor concluded his knee problem at that time was due to climbing ladders as a volunteer fireman.
Considering all of the evidence, particularly that of the probability of an early onset of arthritis due to this accident, we do not regard the award of $87,500 an abuse of discretion.
As to the award for future medical expenses, we know the probable operation will cost between $3,000 and $5,000, that the arthritis would develop in plaintiff's mid-thirties or forties (some 15 years from the date of the accident), and as of that *183 time the medication would cost between $1 and $2 per day.
Because of the need for medicines over an extensive period of time, and the need for future medical examinations and treatment for the probable early onset of arthritis, we cannot say the jury award was manifestly erroneous.
Relative to the award of $50,000 for future loss of wages, plaintiff missed one month of work, for which he has been compensated in the original judgment. He was able to return to his former position where he was still employed at the time of trial. Nevertheless it is clear that plaintiff will suffer a future loss of wages when he is required to undergo surgery in the future. It is more probable than not that such an operation will be needed. Therefore the future hospitalization and recouperative period thereafter means plaintiff would sustain a future loss of wages.
Plaintiff is an actively involved, ambitious 20-year-old young man, who, in addition to his job with T G & Y, spends many hours as a volunteer fireman. He is about to complete his training at a vocational technical school to become a process operator in a petro-chemical plant, a job which pays $35,000 to $40,000.
The jury award is apparently based upon an increase in plaintiff's wages at that time, 15 years hence. In view of plaintiff's additional educational training we cannot say that the jury award, while generous, was manifestly erroneous.
For the reasons assigned the judgment appealed from is affirmed.
AFFIRMED.