DAVEY DIMARCO, ARMOND DOTEY, JAMES MCCARROLL AND MARC MESSINA

VERSUS

JACKSON INDUSTRIAL SERVICE INC., PRIME INSURANCE COMPANY, AND BUDDY JONES

NO. 21-CA-530

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-THIRD JUDICIAL DISTRICT COURT
PARISH OF ST. JAMES, STATE OF LOUISIANA
NO. 37,209, DIVISION "E"
HONORABLE ALVIN TURNER, JR., JUDGE PRESIDING

June 15, 2022

**MARC E. JOHNSON**
**JUDGE**

Panel composed of Judges Marc E. Johnson,
Robert A. Chaisson, and Hans J. Liljeberg

**REVERSED IN PART;**
**AFFIRMED IN PART;**
**AFFIRMED AS AMENDED**

    **MEJ**
    **RAC**
    **HJL**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Jalisa Walker
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLEE,
DAVEY DIMARCO, ARMOND DOTEY, JAMES MCCARROLL, JR., AND
MARC MESSINA
     Vincent J. DeSalvo

COUNSEL FOR DEFENDANT/APPELLANT,
JACKSON INDUSTRIAL SERVICE, INC., PRIME INSURANCE COMPANY,
AND BUDDY JAMES
     J. Geoffrey Ormsby

**JOHNSON, J.**

Defendants, Prime Insurance Company, Jackson Industrial Service, Inc., and Buddy Jones, seek review of the Twenty-Third Judicial District Court for the Parish of St. James' May 24, 2021 judgment awarding Plaintiffs, Davey Dimarco, Armond Dotey, James McCarroll, and Marc Messina, damages for pain and suffering and past and future medical expenses. Plaintiffs also filed an answer to the appeal, requesting that this Court increase various damages awards. For the following reasons, we reverse in part, affirm in part, and affirm as amended the trial court's judgment.

## FACTS AND PROCEDURAL HISTORY

On January 28, 2015, Marc Messina was driving northbound on La. Highway 3125 in a 2001 Honda Accord with passengers Davey Dimarco, Armond Dotey, and James McCarroll, Jr., when that vehicle was struck on its rear passenger side by a 2001 Kentwood tractor trailer exiting a private driveway. The tractor trailer was operated by Buddy Jones, owned by Jackson Industrial Service, Inc., and insured by Prime Insurance Company. The vehicle was "totaled" for insurance purposes, but Plaintiffs were able to drive themselves to the emergency room in Hammond after the accident.

Plaintiffs timely filed a Petition for Damages on September 15, 2015. Plaintiffs averred that, as a result of the January 28, 2015 accident, they were entitled to past and future damages for physical pain and suffering; mental anguish and emotional distress; inconvenience and loss of enjoyment of life; and medical and related expenses. Defendants argued that any damages Plaintiffs sustained were caused by their own fault and/or negligence, and Plaintiffs failed to mitigate their damages.

21-CA-530                                    1

The parties stipulated that Defendant Buddy Jones was solely at fault in causing the motor vehicle accident. They also agreed that the only issues to be determined by the trial court would be the nature and extent of the injuries sustained by Plaintiffs, medical causation of those injuries, and general and special damages awards to Plaintiffs. Also, each of Plaintiffs' respective claims would not exceed $50,000.00, exclusive of interest and costs. The parties also stipulated to the authentication, admissibility, and introduction into evidence of the following exhibits: Plaintiffs' certified medical records, medical bills, and depositions from their treating physicians; depositions of their treating physicians; a copy of the Prime Insurance Company policy in effect at the time of the accident; any and all property damage photographs; and the Plaintiffs' employment records.

A one-day bench trial was held on April 7, 2021. The four Plaintiffs were the only witnesses to testify.

After Plaintiffs rested, Defendants moved for a directed verdict and judgment as a matter of law, alleging that none of Plaintiffs proved that the medical treatment they received was related to the accident. Defendants argued that there was no clinical evidence that correlated with Plaintiffs' subjective testimony, and that the evidence that was provided called the witnesses' credibility into question. Plaintiffs countered that the unopposed depositions of their doctors established causation. The court denied the motion, took the matter under advisement, and granted the parties the opportunity to submit post-trial memoranda. On May 24, 2021, the trial court issued judgment in favor of Plaintiffs and against Defendants.[1] In its written reasons for judgment, the trial court outlined Plaintiffs' diagnoses and treatment plans. In awarding damages, the trial court recognized that "a plaintiff is under a duty to mitigate his damages by

---

[1] The judgment was amended by the trial court on March 8, 2022, to additionally cast judgment against Jackson Industrial Service, Inc., which was not named as a co-defendant by the May 24, 2021 judgment.

seeking medical treatment and . . . [the court] has taken that into consideration in awarding damages." Observing that the "injuries sustained by each plaintiff are very serious," the trial court found that Plaintiffs were entitled to damages in the following amounts:

| Armond Dotey: | Past Medical Expenses: | $12,736.00 |
| | Future Medical Expenses: | $-0- |
| | Past Pain and Suffering: | $10,000.00 |
| | Future Pain and Suffering: | $-0- |
| | Total: | $22,736.00 |
| | | |
| Marc Messina: | Past Medical Expenses: | $12,282.30 |
| | Future Medical Expenses: | $-0- |
| | Past Pain and Suffering: | $36,000.00 |
| | Future Pain and Suffering: | $-0- |
| | Total: | $48,282.30 |
| | | |
| Davey Dimarco: | Past Medical Expenses: | $17,045.20 |
| | Future Medical Expenses: | $18,391.38 |
| | Past Pain and Suffering: | $10,000.00 |
| | Future Pain and Suffering: | $4,563.42 |
| | Total: | $50,000.00 |
| | | |
| James McCarroll Jr.: | Past Medical Expenses: | $13,986.00 |
| | Future Medical Expenses: | $3,103.00 |
| | Past Pain and Suffering: | $24,000.00 |
| | Future Pain and Suffering: | $8,911.00 |
| | Total: | $50,000.00 |

The instant appeal followed.

## ASSIGNMENTS OF ERROR

On appeal, Defendants argue that the trial court erred in awarding damages to Mr. Dimarco and Mr. McCarroll for future medical expenses and for future pain and suffering as both of those Plaintiffs are refusing to undergo the medical procedures recommended by their treating physicians for the relief of their symptoms. Defendants also assign as error the trial court's award of "excessive general damages" for past pain and suffering to Mr. Dotey, Mr. McCarroll and Mr. Messina because those Plaintiffs received minimal medical treatment and "testified that their pain resolved within a few months and/or could be managed with over-the-counter pain medicine." Defendants also challenge the amount of past medical expenses awarded to Mr. Dotey.

Plaintiffs timely filed an answer to appeal on August 3, 2021, pursuant to La. C.C.P. art. 2133, and argued that the trial court abused its discretion and prayed that certain general damages awards be increased.[2] In their appellate brief, Plaintiffs argue that the trial court abused its discretion, and seek an increase in the amount of general damages awarded to Davey Dimarco for past and future pain and suffering, and to James McCarroll for past and future pain and suffering and mental anguish.

## LAW AND DISCUSSION

"The fundamental principle of tort liability in Louisiana is that '[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.'" La. C.C. art. 2315. In a negligence action under Article 2315, the plaintiff bears the burden of proving fault, causation and damages. *Beausejour v. Percy*, 08-379 (La. App. 5 Cir. 10/14/08); 996 So.2d 625, 628. "It is

---

[2] In their reply brief, Defendants argue that Mr. Dimarco and Mr. McCarroll cannot seek relief on appeal because they did not file an answer to the appeal or file a cross-appeal. La. C.C.P. art. 2133 provides that an appellee can file an answer to the appeal seeking modification of the judgment "not later than fifteen days after the return day or the lodging of the record whichever is later." The record in this matter was lodged on July 28, 2021, and Plaintiffs filed a timely answer to the appeal on August 3, 2021.

well settled in our jurisprudence that a defendant takes his victim as he finds him and is responsible for all natural and probable consequences of his tortious conduct." *American Motorist Ins. Co. v. American Rent–All,* 579 So.2d 429, 433 (La. 1991). Where defendant's negligent action aggravates a preexisting injury or condition, he must compensate the victim for the full extent of his aggravation. *Touchard v. Slemco Elec. Found.*, 99-3577 (La. 10/17/00); 769 So.2d 1200, 1204.

The trier of fact is afforded much discretion in assessing the facts and rendering an award because it is in the best position to evaluate witness credibility and see the evidence firsthand. *McDonald v. AIG Nat. Ins. Co., Inc.*, 10-751 (La. App. 5 Cir. 3/29/11); 63 So.3d 240, 241, *citing Bouquet v. Wal–Mart Stores, Inc.,* 08-309 (La. 4/4/08); 979 So.2d 456, 459. To determine whether the fact finder has abused its discretion, the reviewing court looks first to the facts and circumstances of the particular case. *Bouquet v. Wal–Mart Stores, Inc.,* 979 So.2d at 459.

"[C]ompensatory damages[. . .] encompasses those damages ʻdesigned to place the plaintiff in the position in which he would have been if the tort had not been committed.'" *Wainwright v. Fontenot*, 00-492 (La. 10/17/00); 774 So.2d 70, 74, *citing* Frank L. Maraist & Thomas C. Galligan, Jr., LOUISIANA TORT LAW § 7–1 (Michie 1996). Compensatory damages are divided into special damages and general damages. *Romano v. Jefferson Par. Sheriff's Office*, 13-803 (La. App. 5 Cir. 3/26/14); 138 So.3d 688, 693, *writ denied*, 14-700 (La. 5/16/14); 139 So.3d 1028. Special damages, such as past and future medical expenses, are those which have a "ready market value," such that the amount of damages can be calculated with relative certainty. *Antill v. State Farm Mut. Ins. Co.*, 20-131 (La. App. 5 Cir. 12/2/20); 308 So.3d 388, 407, *citing Kaiser v. Hardin*, 06-2092 (La. 4/11/07); 953 So.2d 802, 810. To recover medical expenses, whether past or future, a plaintiff must show, through medical testimony, both the existence of the injury and a

causal connection between the injuries and the incident of which plaintiff complained. *McDonald*, 63 So.3d at 242. The plaintiff must show through medical testimony that it is more probable than not the subsequent medical treatment was necessitated by the trauma suffered in the accident. *Romano*, 138 So.3d at 694. The plaintiff bears the burden of proving special damages by a preponderance of the evidence. *Antill*, *supra*. Before reversing a trial court's factual conclusions with regard to special damages, an appellate court must satisfy a two-step process based on the record as a whole: there must be no reasonable factual basis for the trial court's conclusions, and the finding must be clearly wrong. *Id.*, *citing Kaiser, supra*. The manifest error standard controls on the issue of the assessment of special damages. *McDonald*, *supra*.

> Future medical expenses, as special damages, must be established with some degree of certainty, and a plaintiff must demonstrate that such expenditures will, more probably than not, be incurred as a result of the injury. The proper standard for determining whether a plaintiff is entitled to future medical expenses is proof by a preponderance of the evidence that the future medical expense will be medically necessary. Awards will not be made in the absence of medical testimony that they are indicated and setting out their probable cost. An award for future medical expenses is in great measure highly speculative and not susceptible to calculation with mathematical certainty and generally turns on questions of credibility and inferences. [Citations omitted.]

*Jackson v. Underwriters at Lloyd's of London*, 21-15 (La. App. 5 Cir. 9/29/21); 329 So.3d 1029, 1040-41, *writ denied,* 21-1591 (La. 1/12/22); 330 So.3d 617.

General damages are inherently speculative in nature and, unlike special damages, cannot be fixed with any mathematical certainty. *Romano*, 138 So.3d at 693.

> 'General damages' involve mental or physical pain and suffering, inconvenience, loss of gratification or intellectual or physical enjoyment, or other losses of lifestyle that cannot be measured definitively in terms of money. Pain and suffering, both physical and mental, refers to the pain, discomfort, inconvenience, anguish, and emotional trauma that accompanies an injury. The factors to be considered in assessing quantum of, damages for pain and suffering are severity and duration.

*Willis v. Noble Drilling (US), Inc.*, 11-598 (La. App. 5 Cir. 11/13/12); 105 So.3d 828, 845 (footnotes omitted). In reviewing the factfinder's assessment of general damages, the court does not decide what it considers to be an appropriate award, but rather reviews the record to determine whether the trier of fact abused its discretion. *Simon v. Auto. Club Inter-Ins. Exch.*, 20-156 (La. App. 5 Cir. 10/13/21); 329 So.3d 1072, 1081. This vast discretion is such that an appellate court should rarely disturb an award of general damages. *Youn v. Maritime Overseas Corp.,* 623 So.2d 1257, 1261 (La. 1993), *cert. denied,* 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). "Another reason for the vast discretion the trial court has in awarding general damages, is that unlike special damages which often require the production of an expert witness in order for a party to prevail, general damages may be awarded without the need of such proof, and the testimony of the party alone may suffice." § 8.6. *Special vs. general damages*, 6 La. Civ. L. Treatise, Law Of Obligations § 8.6 (2d ed.). On appeal, the issue to be resolved is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. *Boxie v. Smith-Ruffin,* 07-264 (La. App. 5 Cir. 2/6/08); 979 So.2d 539, 545.

Appellate courts review the evidence in the light which most favorably supports the judgment to determine whether the trier of fact was clearly wrong in its conclusions. *Id.* at 549. Reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. *Id.* at 545. An appellate court may not overturn an award for general damages unless it is so out of proportion to the injury that it shocks the conscience. *Ursin v. Russell*, 07-859 (La. App. 5 Cir. 2/6/08); 979 So.2d 554, 560. A reviewing court may raise the award to the lowest reasonable amount or reduce it to the highest reasonable amount, only if articulable reasons are found to show that

a reasonable trier of fact could not have made the award under all of the circumstances of the case. *Williams v. Maritime, Inc.,* 04-625 (La. App. 5 Cir. 11/30/04); 889 So.2d 1055, 1059, *writ denied,* 04-3226 (La. 3/11/05); 896 So.2d 72.

### *Armond Dotey*

Defendants allege that the general damages award of $10,000.00 for past pain and suffering for Armond Dotey's soft tissue injury that resolved after a couple weeks with three therapy sessions is abusively high. Defendants also contend that the amount of past medical expenses awarded ($12,736.00) should be reduced because $2,157.00 of the expenses is for a TENS unit that Mr. Dotey rarely used.[3] Defendants further argue that this amount is excessive because the physical therapy provider charged a rate of $10/day for the TENS unit and claim that Mr. Dotey could have purchased the device for a fraction of this cost.

At trial, Mr. Dotey testified that he was asleep in the rear passenger seat just before the accident occurred. He hit his head on the window and "popped" his shoulder while attempting to brace himself. He saw Dr. Barrett Johnston, who was offered and accepted as an expert in anesthesiology and pain management, the day after the accident, for his neck, left shoulder and lower back pain. Dr. Johnston ordered an MRI, concerned that there might be some underlying neurological deficit resulting from the accident because of Mr. Dotey's demonstrated restricted range of motion. After reviewing the MRI, Dr. Johnston diagnosed Mr. Dotey with tendonitis and bursitis of the left shoulder, and cervical and lumbar spine muscle spasms caused by the accident, which are signs of soft tissue injuries. Dr. Johnston opined that the pain Mr. Dotey reported that he was still experiencing at

---

[3] In their appellate brief, Defendants argue that the charges from the physical therapy provider who provided the TENS unit totaled $3,643.00, and should have been only $1.486.00 for the physical therapy visits. Therefore, we calculate that the amount of the disputed charges relating to the TENS unit is $2,157.00.

his second visit was "more probably than not" a result of the accident.  Mr. Dotey was supposed to follow up with Dr. Johnston a few weeks later, but Dr. Johnston never saw him again.

Following Mr. Dotey's second visit in February 2015, Dr. Johnston recommended physical therapy.  According to the treatment records from Hammond Physical Therapy Clinic, Mr. Dotey attended four physical therapy sessions on February 25, 2021, March 26, 2015, April 13, 2014, and his last session occurred on May 22, 2021.[4]

Mr. Dotey further testified that he experienced mobility issues and pain in his left shoulder and pain in his lower back every day since the accident, but agreed that since becoming a supervisor, no longer having to perform physical work, treating his symptoms with a TENS unit twice a month through November 2016 and afterwards as needed, and taking over-the-counter pain medication every day and night, he is able to "function and tolerate the pain." On cross-examination, defense counsel impeached Mr. Dotey with his prior deposition testimony regarding his back pain.  In that prior testimony, Mr. Dotey admitted that his back pain resolved within a week of the accident.  Defense counsel also questioned Mr. Dotey as to why he did not seek medical treatment if he was experiencing a significant level of pain and Mr. Dotey responded that he did not seek treatment because he was always working. During this exchange the trial judge also questioned Mr. Dotey about his failure to seek treatment and indicated that based on the duration and level of pain claimed by Mr. Dotey, one would expect him to seek treatment.  Mr. Dotey then explained that working long hours every day,

---

[4] Defendants argue on appeal that Mr. Dotey only attended three physical therapy sessions.  The printout of the statement of charges from the physical therapy provider only includes charges for three visits in February, March and May 2021.  However, the notes explaining the treatment provided indicate that Mr. Dotey also attended physical therapy on April 13, 2015.

along with being uninsured and unable to miss work, prevented him from seeking further medical treatment.

First, we do not find that the trial court was clearly wrong in awarding Mr. Dotey the expenses charged for the TENS unit. Defendants did not introduce any evidence regarding the actual cost of the device to establish that the charges were excessive. Furthermore, Mr. Dotey testified that he used the TENS unit twice a month from the time he received it through November 2016, shortly before the daily charges ceased. Mr. Dotey further explained that he continued to use the TENS unit at the time of the trial and kept it by his bedside. Accordingly, we find that a reasonable factual basis exists for the trial court's award of medical expenses for the TENS unit.

We also find that the trial court did not abuse its discretion in its $10,000.00 award for past pain and suffering to Mr. Dotey. The trial court reasonably found that Mr. Dotey sustained soft-tissue injuries to his neck, left shoulder and back. Mr. Dotey received treatment for four months following the accident through May 22, 2015. We do not find that an award of $10,000.00 for multiple soft tissue injuries with treatment for a four-month period is an abuse of the trial court's vast discretion.[5] Therefore, we will not disturb the trial court's special and general damages awards to Mr. Dotey.

### Marc Messina

With respect to Mr. Messina, Defendants argue that the trial court abused its discretion by awarding Mr. Messina $36,000.00 – the largest award of general damages of the four Plaintiffs. Defendants contend that the award is an abuse of

---

[5] *See Joseph v. Houston*, 04-350 (La. App. 5 Cir. 10/12/04); 886 So.2d 1133, 113 (finding that the trial court did not abuse its discretion in its damage assessment, awarding reimbursement for medical expenses for five months and $2,500 per month for pain and suffering for the same five-month period; plaintiff suffered from cervical and lumbar sprain, leg pain).

discretion because Mr. Messina only treated for three months and failed to mitigate his damages.

Mr. Messina, the driver of the vehicle struck by the tractor trailer, sustained injuries to his low back and left knee as a result. Mr. Messina's treating physician, Dr. Barrett Johnston, testified via deposition that Mr. Messina had a prior surgery on his left knee, but the symptoms had resolved before the January 28, 2015 accident. Dr. Johnston prescribed medication and physical therapy to treat the more recent symptoms. Mr. Messina saw Dr. Johnston three times in the months following the accident. Mr. Messina initially complained of lower back pain and left anterior leg pain from groin to knee and was diagnosed with thoracic back strain, sprain of the left thigh, and contusion to his left lower leg immediately following the accident. At his initial visit on January 29, 2015, according to Dr. Johnston's records, Mr. Messina's left knee pain was aggravated by "movement, walking and standing [and there were] no relieving factors." During his March 3, 2015 visit, Mr. Messina reported that the pain was "aching," "aggravated by lifting and movement," and relieved by heat and rest. On April 14, 2015, Dr. Johnston noted that Mr. Messina's knee pain "occurs constantly and is worsening. . . . The pain is aching, throbbing and stabbing. The pain is aggravated by bending, lifting, movement, walking and standing. There are no relieving factors. Associated symptoms include decreased mobility, popping, swelling, stiffness and tightness." Dr. Barrett administered a steroid injection at that visit to relieve Mr. Messina's symptoms. Mr. Messina also continued to attend monthly physical therapy sessions until April 22, 2015.

Dr. Johnston testified that he recommended that Mr. Messina see the doctor who performed his knee arthroscopy in 2013. Even without an MRI, Dr. Johnston determined that the inflammation in Mr. Messina's knee was likely an exacerbation of the meniscal tear for which he had previously received treatment.

The trial court also noted in its reasons for judgment that the doctor also diagnosed Mr. Messina with acute lower back pain – the doctor documented that his back pain "had gotten better" by the April 2015 visit. Mr. Messina testified that periods of unemployment and other family responsibilities prevented him from continuing treatment.

Mr. Messina also testified the pain in his knee was severe for the first three or four months after the accident and eased some after the treatment he received from Dr. Johnston, as well as the physical therapy. He testified that he still had pain at the time of trial, but that for the most part, the pain was bearable and he learned to identify his limits. He testified that he did the exercises provided by Dr. Johnston and the physical therapist to try to strengthen his knee on his own. He further testified that he takes ibuprofen for pain as needed. During Mr. Messina's direct examination, the trial court asked Mr. Messina how often he experiences pain and Mr. Messina explained that the pain depends on the level of his activity.

Upon review of the record, we find that the trial court did not abuse its discretion in its $36,000.00 award to Mr. Messina for past pain and suffering. In the instant case, based on Mr. Messina's and Dr. Johnston's testimony, it was reasonable for the trial court to find that Mr. Messina continued to experience pain, as a result of the injuries sustained, for several months after the accident. We recognize that similar to Mr. Dotey, Mr. Messina only received medical treatment for three months. However, as explained above, the trial court questioned the credibility of Mr. Dotey's continued pain through the date of trial. Furthermore, unlike Mr. Dotey, who only experienced soft tissue injuries, the trial court concluded that Mr. Messina experienced an exacerbation of the prior meniscal tear. The amount awarded by the trial court is consistent with awards for similar knee

injuries sustained.[6]  Therefore, we will not disturb the trial court's award to Mr. Messina for past pain and suffering.

### *Davey Dimarco*

Defendants argue on appeal that the trial court erred in awarding Mr. Dimarco future medical expenses and the associated future pain and suffering for a shoulder surgery Mr. Dimarco did not intend to undergo.   In answer to the appeal, Mr. Dimarco argues that the trial court abused its discretion by only awarding him a total of $14,564.42 for general damages when he incurred $17,517.20 in past medical expenses.

At trial, Davey Dimarco testified that he is a construction worker, and he was riding in the front passenger seat when the tractor trailer hit the passenger rear quarter panel of the vehicle.  The impact of the accident caused Mr. Dimarco's right shoulder, hip, leg and ankle to slam against the car door and kick panel.  The day after the accident, Dr. Allen Johnston, an expert in orthopedic surgery per the parties' stipulation, prescribed medications, including a muscle relaxer and pain medication, gave Mr. Dimarco an immobilizer for his ankle, recommended physical therapy, and placed him on light duty at work.  Mr. Dimarco received a steroid injection in his right shoulder on February 4, 2015, and the doctor maintained the order for restrictive duty at work.  Mr. Dimarco started receiving physical therapy on February 10, 2015.

---

[6] *See Cox v. Cadaro*, 484 So.2d 177, 181 (La. App. 5th Cir. 2/13/1986) (finding a jury had not abused its discretion in awarding an active twenty-year old man, a volunteer firefighter training to become a plant process operator, $87,500 for pain and suffering after suffering injury of his right knee and re-injury of his left knee in an automobile accident after receiving conservative care from August 30, 1984 (six days after the accident) to October 11, 1984.  Plaintiff's medical expenses for that period, for examination and treatment, amounted to $302.); *Poulan v. Hunter*, 36,225 (La. App. 2 Cir. 11/6/02); 830 So.2d 1125, 1130 (finding the trial court's award of $32,000 in general damages was not beyond the amount reasonably within the factfinder's broad discretion.  The plaintiff sustained a twisting injury to his left knee after being hit by an automobile, an MRI revealed swelling of the knee and possible tearing of the knee's medial meniscus and ACL, and the treating physician recommended conservative treatment and stated that arthroscopic surgery should be considered if the plaintiff's symptoms continued).

By March 2015, Mr. Dimarco's neck and ankle were improving, but his right shoulder and low back was still symptomatic. Dr. Johnston recommended MRIs of Mr. Dimarco's lower back and right shoulder, and that he "continue at light duty" at work. MRIs taken later that month showed straightening of the lumbar curve consistent with muscle spasms and impingement of the rotator cuff, which often occurs as a result of a blow to the shoulder, according to Dr. Johnston.

At the April 2015 visit, Dr. Johnston reviewed the MRI results and recommended Mr. Dimarco continue with therapy for his lower back and medication as prescribed. Also, "depending on his symptoms," the doctor recommended "decompressing his rotator cuff or removing the underneath surface of that bony ledge that was dinging or banging against the rotator cuff." At his May 2015 visit, Mr. Dimarco informed Dr. Johnston that his condition had not significantly changed, but his ankle may have been "a little bit worse." Dr. Johnston recommended taking an MRI of the ankle and advised Mr. Dimarco that he was still a candidate for surgery on his shoulder, depending on his symptoms. Via deposition testimony, Dr. Johnston advised "[the impingement is] not an emergent condition, it's not an absolute you have to have surgery for, it's an elective surgery."

The MRI of Mr. Dimarco's ankle taken in June 2015 showed that he had tenosynovitis, an inflammation of the tendons surrounding the outside of the ankle. Dr. Johnston injected Mr. Dimarco's ankle with cortisone to relieve the inflammation and promote healing. By his July 2015 visit, Mr. Dimarco's symptoms had mostly resolved with the exception of the pain in his right shoulder. Dr. Johnston explained in his deposition that Mr. Dimarco had tried to return to full duty as a scaffold builder, but he reported that he still had pain with abduction ("moving his arm away from the side of his body") and his pain increased when performing activities that required him to raise his arm above his head. Mr.

Dimarco received an injection of Celestone and Marcaine to treat the still-present impingement. By August 2015, Mr. Dimarco's shoulder had improved after the injection, but prolonged overhead activity while working full-time as a scaffold builder "worsened his discomfort." Dr. Johnston advised that he was still a candidate for arthroscopy if his symptoms continued.

At the April 2021 trial, Mr. Dimarco testified that he continued to have shoulder pain over the past five years. Dr. Johnston re-evaluated Mr. Dimarco's condition on January 11, 2021 at his counsel's behest. Dr. Johnston again injected Mr. Dimarco's right shoulder, and again advised him that he was a candidate for shoulder decompressions, if his symptoms persisted, and to return in six months. Mr. Dimarco stated that he did not intend to undergo the surgical procedure and informed Dr. Johnston of the same, both in 2015 and 2021. The medical records introduced into evidence indicated that the estimated cost of the surgical procedure to repair Mr. Dimcarco's shoulder was $18,391.38.

The trial court found that Mr. Dimarco sustained injuries to his neck, low back, ankle, and right shoulder as a result of the accident and awarded him $17,045.20 for past medical expenses; $18,391.38 for future medical expenses; $10,000.00 for past pain and suffering; and $4,563.42 for future pain and suffering.

Defendants urge that the trial court erred in awarding Mr. Dimarco future medical expenses of $18,391.38 – the estimated cost of the surgical procedure to repair his shoulder according to medical records introduced into evidence. Before reversing a trial court's factual conclusions with regard to special damages, an appellate court must satisfy a two-step process based on the record as a whole: There must be no reasonable factual basis for the trial court's conclusions, and the finding must be clearly wrong. *Antill*, *supra.* Upon review of the record, we agree that the trial court erred when it awarded Mr. Dimarco the cost of the surgical procedure he has refused to undergo although it would likely alleviate his

symptoms. *See Boxie v. Smith-Ruffin*, 979 So.2d at 549 (reversing as error the trial court's award of future medical expenses for recommended surgical procedures for back injuries that the plaintiffs refused to undergo, chose to treat their symptoms with medication and doctor's visits, and provided no proof that they would seek surgical treatment in the future). Future medical expenses, as special damages, must be established with some degree of certainty, and a plaintiff must demonstrate that such expenditures will, more probably than not, be incurred as a result of the injury. *Antill*, *supra*. Mr. Dimarco did not present evidence to establish any other medical expenses that he would incur in the future that would justify such an award. Therefore, we reverse the trial court's judgment awarding Mr. Dimarco future medical expenses in the amount of $18,391.38.

Defendants also argue that the trial court abused its discretion in awarding Mr. Dimarco $4,563.42 for future pain and suffering. Mr. Dimarco conversely seeks an increase in the total amount awarded to him for past and future general damages from $14,563.42 to $30,000.00. Before a trial court's general damages award may be set aside as inadequate or excessive by an appellate court, the reviewing court must look first, not to prior awards, but to individual circumstances of the instant matter before it. *Abadie v. Metro. Life Ins. Co.*, 00-344 (La. App. 5 Cir. 03/28/01); 784 So.2d 46, 105-106. Only after an analysis of the facts and circumstances peculiar to the instant case can a reviewing court determine the award is either excessive or inadequate. *Id.* The reviewing court may not merely look at past awards for similar injuries in the determination of whether the trier of fact abused its much discretion. *Harris v. State, Dep't of Transp. & Dev.,* 16-524 (La. App. 5 Cir. 6/15/17); 223 So.3d 695, 708, *citing Reck v. Stevens*, 373 So.2d 498, 501 (La. 1979). Rather, only after a determination that the trier of fact has abused its "much discretion" is a resort to prior awards appropriate, and then only for the purpose of determining the highest or lowest

point which is reasonably within that discretion. *Id.*, *citing Coco v. Winston Indus., Inc.*, 341 So.2d 332, 335 (La. 1976).

Mr. Dimarco incurred $17,045.20 in past medical expenses. He saw Dr. Johnston for seven months after the accident, and received treatment at nine physical therapy sessions for four months following the accident to address symptoms in his neck, right shoulder, and lower back. He also suffered with inflammation of the tendons around his ankle for six months. As of the trial date, Mr. Dimarco received one injection in his ankle and three injections in his shoulder. Dr. Johnston testified that Mr. Dimarco has continued to have right shoulder pain and was still a candidate for shoulder surgery in January 2021. The doctor further testified that Mr. Dimarco explained to him that he had not followed up with treatment since 2015 because he was unsure if the insurance he had obtained from more recent employers would cover his pre-existing condition. Instead, he managed his pain and discomfort with over-the-counter medication and with exercises and shoulder stretches his primary care physician recommended.

Upon review of the record, we first agree that the trial court abused its discretion in awarding Mr. Dimarco $4,563.42 in general damages for future pain and suffering associated with the surgery that he refused to undergo to alleviate the symptoms he was experiencing in his shoulder. Therefore, we reverse this award. However, at the same time, we find that considering the particular facts and circumstances at issue, the trial court abused its discretion by only awarding Mr. Dimarco $10,000.00 in general damages for his past pain and suffering and further find that this award is abusively low.[7] Mr. Dimarco received various treatments for injuries to four different parts of his body from the time of the subject accident through August 2015. For that reason, we surveyed cases including similar

---

[7] We further recognize the possibility that the trial court reduced the award for past pain and suffering without providing an explanation in the reasons for judgment as the entire award for general and special damages adds up to $50,000.00, the maximum stipulated amount agreed to between the parties.

damages to determine the lowest reasonable award in this case, considering the particular circumstances of this case. *See Joseph v. Netherlands Ins. Co.*, 15-549 (La. App. 5 Cir. 2/24/16); 187 So.3d 517, 520. In *Sanchez v. Dubuc*, 12-526 (La. App. 5 Cir. 2/21/13); 110 So.3d 1140, 1146, Mr. Sanchez received only four and one-half months of treatment, and was still in pain at trial which took place 27 months after the subject accident. This court found that a general damage award of up to $67,500.00 for a 27-month soft tissue injury ($2,500.00 per month -- quantum which the Court noted is supported in the jurisprudence) could be within the trial court's discretion.

In *Williams v. Roberts*, 05-852 (La. App. 5 Cir. 4/11/06); 930 So.2d 121, 124, the plaintiff experienced injuries to her cervical, thoracic, and lumbar spine as a result of an accident in which her vehicle was rear-ended. This court amended the general damages award to $7,500.00, which we found to be "commensurate with a soft-tissue injury that resolves over a three-month duration."

*In All v. Safeco Ins. Co.*, 17-632 (La. App. 1 Cir. 11/1/17); 235 So.3d 1134, 1138-39, the First Circuit found that the trial court did not abuse its discretion in awarding an injured motorist $66,000.00 in general damages -- $3,000.00 a month for pain and suffering caused by a cervical soft tissue injury -- reduced to $50,000.00, as it was proven that the plaintiff's pain and suffering continued for 22 months, from the accident until trial. The First Circuit concluded "[r]egardless of the lapse in her treatment, [plaintiff's] testimony at trial, corroborated by [doctor's] deposition, revealed that she continued to have neck pain during those five months and continued to have that same pain the day of trial."

Accordingly, because Mr. Dimarco introduced evidence at trial that proved he received seven months of treatment for various soft tissue injuries, as well as several steroid injections in his ankle and shoulder due to a shoulder impingement, we find that the lowest appropriate award for Mr. Dimarco's past pain and

suffering is $21,000.00.  Accordingly, we amend the trial court's award for past pain and suffering from $10,000.00 to $21,000.00.

### *James McCarroll, Jr.*

Defendants argue the trial court erred when it awarded Mr. McCarroll $3,103.00 for future medical expenses and $8,911.00 for future pain and suffering because Mr. McCarroll has refused additional medical treatment.  Defendants also argue that the trial court abused its discretion when it awarded Mr. McCarroll $24,000.00 for past pain and suffering for a soft tissue injury that resolved in five months.  In Plaintiffs' answer, Mr. McCarroll also alleges that the trial court abused its discretion, and requests an increase in the total award for general damages to $50,000.00.

Dr. Allen Johnston treated Mr. McCarroll after the subject accident, and also after a previous car accident that occurred on December 18, 2014.  After the subject accident, Mr. McCarroll again experienced pain in his lower back and neck, and also in his left leg.  On cross-examination, Mr. McCarroll admitted that, in his deposition, he previously stated the subject accident "boosted" the pain caused by the first accident, but he "also had much more pain from the second wreck."  After the subject accident, Mr. McCarroll again experienced pain in his lower back and neck, and also in his left leg.  During the January 29, 2015 visit, Dr. Johnston prescribed medication to treat pain and inflammation, muscle relaxers, placed Mr. McCarroll on light duty work restriction, and recommended an injection and physical therapy.  In February 2015, Dr. Johnston also ordered MRIs; neck and back MRIs showed bulging of the C6-7 disc and bulging to the left at the T4-5 in the mid back, a left-sided L5-S1 disc herniation, and bulging of the L4-L5 disc.  Mr. McCarroll received an injection in his back in March 2015 and reported that his symptoms had improved thereafter.  Mr. McCarroll returned to work without restrictions in April 2015, and told the doctor he could manage his

pain with over-the-counter anti-inflammatory medication by the end of May 2015, so he was discharged, to return for treatment as needed. He saw Dr. Johnston again in August 2015 and, although Mr. McCarroll reported that his pain was reoccurring, he elected not to receive a second steroid injection to treat his lower back pain.

By early September 2015, Mr. McCarroll described his back pain as "a 6 out of 10," but he was able to manage that level of discomfort. Mr. McCarroll testified that that he refused a second injection because the relief provided did not last as long as he expected. Dr. Johnston agreed that he would not have recommended more injections if Mr. McCarroll's pain was manageable. Mr. McCarroll was instructed to continue to take the medication prescribed, stretch and exercise daily at home, and return for evaluation in four weeks. He never saw Dr. Johnston again. Dr. Johnston explained that the injury to Mr. McCarroll's disc was permanent, that his condition could lead to more back pain over time, and agreed that whether or not a doctor orders another MRI and/or recommends additional treatment is determined by the degree of pain complained of.

The trial court found that Mr. McCarroll sustained injuries to his neck and lower back and noted that Dr. Allen Johnston opined in his deposition testimony that the disc herniation "most likely occurred during the January 28, 2015 automobile accident." With respect to the general damages award for past and future pain and suffering, $32,911.00, we find that the trial court did abuse its discretion in awarding this amount of general damages to Mr. McCarroll.[8] We have previously found that the lowest reasonable general damages award for a non-surgical permanent disc herniation within the trier of fact's discretion is $50,000.00. *Sanchez v. Dubuc*, 110 So.3d at 1146, *citing Webb v. Horton,* 01-978

---

[8] Again, we recognize the possibility that the trial court reduced the awards for past and future pain and suffering without providing an explanation in the reasons for judgment to comply with the $50,000.00 stipulation.

(La. App. 5 Cir. 2/13/02); 812 So.2d 91, 99; *Rehm v. Morgan,* 04-344 (La. App. 5 Cir. 10/26/04); 885 So.2d 687, 692-93.   But, because each Plaintiff stipulated that his total damages did not exceed $50.000.00, we can only increase Mr. McCarroll's total general damages award for past and future pain and suffering to $36,014.00.

Further, we find that the trial court erred when it awarded Mr. McCarroll future medical expenses of $3,103.00.  Mr. McCarroll testified that his back pain was manageable, and he gave no indication that he would treat his back pain with a steroid injection in the future.  Similar to Mr. Dimarco (*see* our discussion, *supra*), Mr. McCarroll did not establish with some degree of certainty that he would more likely than not incur the cost of an additional steroid injection in the future, therefore we will reverse Mr. McCarroll's award to exclude future medical expenses. *Antill*, *supra*.

### *DECREE*

Considering the foregoing, with respect to Armond Dotey and Marc Messina, we affirm the trial court's awards of past pain and suffering and past medical expenses.  We reverse the award of future medical expenses and future pain and suffering to Davey Dimarco, and amend the award of damages for past pain and suffering from $10,000.00 to $21,000.00.  Finally, we reverse the award for future medical expenses to James McCarroll, Jr. and amend the general damages awards for past and future pain and suffering to increase them from a total of $32,911.00 to $36,014.00.

Therefore, the awards to Plaintiffs are reversed, amended, and affirmed as follows:

Armond Dotey:

| | |
|---|---|
| Past Medical Expenses: | $12,736.00 |
| Future Medical Expenses: | $-0- |

|  |  |  |
|---|---|---|
|  | Past Pain and Suffering: | $10,000.00 |
|  | Future Pain and Suffering: | $-0- |
|  | Total: | $22,736.00 |
| Marc Messina: | Past Medical Expenses: | $12,282.30 |
|  | Future Medical Expenses: | $-0- |
|  | Past Pain and Suffering: | $36,000.00 |
|  | Future Pain and Suffering: | $-0- |
|  | Total: | $48,282.30 |
| Davey Dimarco: | Past Medical Expenses: | $17,045.20 |
|  | Future Medical Expenses: | $-0- |
|  | Past Pain and Suffering: | $21,0000.00 |
|  | Future Pain and Suffering: | $ -0- |
|  | Total: | $38,045.20 |
| James McCarroll Jr.: | Past Medical Expenses: | $13,986.00 |
|  | Future Medical Expenses: | $-0- |
|  | Past and Future Pain and Suffering: | $36,014.00 |
|  | Total | $50,000.00 |

**REVERSED IN PART;**
**AFFIRMED IN PART;**
**AFFIRMED AS AMENDED**

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

MARY E. LEGNON
INTERIM CHIEF DEPUTY CLERK

SUSAN S. BUCHHOLZ
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF



**FIFTH CIRCUIT**

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

(504) 376-1400
(504) 376-1498 FAX

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED
IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY
**JUNE 15, 2022** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT
REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

## 21-CA-530

**E-NOTIFIED**
23RD JUDICIAL DISTRICT COURT (CLERK)
HONORABLE ALVIN TURNER, JR. (DISTRICT JUDGE)
VINCENT J. DESALVO (APPELLEE)      J. GEOFFREY ORMSBY (APPELLANT)      RANDALL A. SMITH (APPELLANT)
STEPHEN M. GELE (APPELLANT)

**MAILED**
NO ATTORNEYS WERE MAILED